AB-96-67                                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Nilka Marrero García | Queja <br><br> 2001 TSPR 55 |

Número del Caso: AB-96-67

Fecha: 18/abril/2001

Oficina del Procurador General:

  Lcda. Minnie H. Rodríguez López
  Procuradora General Auxiliar

  Lcdo. Francisco J. González Muñiz
  Procurador General Auxiliar

Abogada de la Parte Querellada:

  Por Derecho Propio

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re:

Nilka Marrero García

                                        AB-96-0067

SENTENCIA

San Juan, Puerto Rico, a 18 de abril de 2001.

En junio de 1996 el entonces Senador Cirilo Tirado Delgado presentó una queja ante esta Curia contra la Lcda. Nilka Marrero García en la que le imputa violación a los Cánones de Etica Profesional al prestar sus servicios profesionales en el Senado de Puerto Rico como Oficial Investigadora de la Comisión de lo Jurídico que investigaba la pesquisa senatorial sobre la investigación anterior del Senado sobre los sucesos del Cerro Maravilla, a la vez que figuraba como abogada de Angel Figueroa Vivas en la petición de reapertura de los procedimientos de suspensión que estaba siendo considerada por este Tribunal.

Además expuso que Marrero García ocupó la posición de fiscal delegada de la Oficina del Fiscal Especial Independiente y que violó los Cánones de Etica Profesional cuando en representación de Figueroa Vivas en el procedimiento de reapertura ante este Tribunal imputó la comisión de irregularidades y actuaciones impropias cometidas por el Senado durante la investigación de los sucesos del Cerro Maravilla que se llevó a cabo entre el 1981 y 1992, y posteriormente durante el proceso de desaforo de Figueroa Vivas en el que la Oficina del Fiscal Independiente fungió como Procurador Especial. Sostiene el entonces Senador Tirado Delgado que al representar a Figueroa Vivas en su solicitud de reapertura ante esta Curia, Marrero García se colocó en un conflicto impermisible de intereses en violación de los Cánones 5, 21, 28, y 38 de Etica Profesional. La queja presentada por el entonces Senador Tirado Delgado requiere que resolvamos si la conducta anteriormente descrita constituye conflicto de intereses y conducta impropia, en violación de los Cánones 6, 21 y 38.

I

Oportunamente emitimos una Resolución en la que se le concedió un término a Marrero García para mostrar causa por la cual no se debía ordenar que dejara de intervenir en los procedimientos de la Comisión hasta tanto se adjudicara la queja en su contra. Además, le solicitamos que tomara la medida cautelar de no intervenir en los procedimientos de la Comisión referida.

A raíz de dicho pronunciamiento, Marrero García renunció a su puesto de Oficial Investigadora de la Comisión de lo Jurídico del Senado y, oportunamente, compareció ante nos e informó que antes de la presentación de la queja en su contra por el entonces Senador Tirado Delgado había renunciado a la representación legal de Figueroa Vivas en el procedimiento ante este Tribunal. También contestó la queja referente al conflicto de intereses.

A tenor con el procedimiento disciplinario dispuesto por el Reglamento del Tribunal, tanto la queja como su contestación fueron remitidas al Procurador General. El Procurador General rindió su Informe y Marrero García lo contestó. Contando con dicho Informe y la comparecencia de Marrero García estamos en posición de resolver la queja presentada sin procedimientos ulteriores.

Examinados cuidadosamente dichos documentos, el Tribunal entiende que existió un potencial conflicto de intereses entre la función de Marrero García como Oficial Investigadora de la Comisión Especial del Senado y su posición anterior en la Oficina del Fiscal Especial Independiente, al participar en la investigación de una entidad de la cual formó parte.

Además la representación de Figueroa Vivas en el proceso de reapertura de los procedimientos de desaforo, presenta un doble conflicto de intereses para Marrero García pues para lograr que este Tribunal reabra el procedimiento contra el ex fiscal, concluido

en 1992, ha argumentado que hubo serias anomalías en los procedimientos investigativos de la Oficina del F.E.I. de la cual ella formó parte.

Por otro lado, Marrero García arriesgaba también un conflicto de intereses ante la posibilidad de que una pesquisa cabal del desempeño de la Oficina del F.E.I. se extendiese a investigar posibles incidencias de error o infracción a la ley en dicha dependencia durante el periodo en que ella trabajó.

Finalmente, como abogada de Figueroa Vivas también se colocó potencialmente en la posición éticamente proscrita de tener que informar a la misma Comisión de lo Jurídico sobre las irregularidades cometidas en la anterior pesquisa del Senado que dieron lugar a la suspensión de su cliente y que se cuestionan en la solicitud de reapertura de procedimientos en el Tribunal Supremo. Tal situación socavaría, cuanto menos en apariencia, su objetividad e imparcialidad en el cumplimiento de su encomienda como investigadora de la Comisión del Senado.

No obstante, un examen cuidadoso del Informe del Procurador General así como de la comparecencia de Marrero García nos ha convencido de que la conducta de la licenciada Marrero García esencialmente constituyó un grave error de juicio y no un acto intencionado de violar los principios deontológicos que rigen la abogacía. De hecho, una vez este Tribunal emitió su orden de mostrar causa, Marrero García acató totalmente los términos de la Resolución emitida por este Tribunal el 5 de julio de 1996 y renunció tanto a la representación de Figueroa Vivas como a su posición de Oficial Investigadora de la Comisión de lo Jurídico del Senado. Consideramos su decisión de renunciar a ambas funciones con carácter inmediato como elemento atenuante en este proceso disciplinario.

Considerando dicha decisión y el buen historial profesional de la querellada, limitamos nuestra sanción disciplinaria a una amonestación a la Lcda. Nilka Marrero García por haber incurrido en conducta constitutiva de conflicto de intereses. Simultáneamente se le apercibe que en el futuro deberá cumplir estrictamente con los postulados éticos de nuestra profesión, particularmente en lo referente a los conflictos de intereses.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton emitió una Opinión de Conformidad a la que se unió el Juez Presidente señor Andréu García. El Juez Asociado señor Fuster Berlingeri emitió Opinión Concurrente. El Juez

Asociado señor Rebollo López no intervino.  La Juez Asociada señora Naveira

de Rodón se inhibió.  El Juez Asociado señor Rivera Pérez no intervino.


                         Isabel Llompart Zeno
                       Secretaria Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Nilka Marrero García

                         AB-96-0067

Opinión de Conformidad emitida por el Juez Asociado señor Hernández Denton a la cual se une el Juez Presidente señor Andréu García

San Juan, Puerto Rico, a 18 de abril de 2001.

La queja presentada en este caso nos obliga a contestar si constituye conflicto de intereses y conducta impropia, en violación a los Cánones 6, 21 y 38, (1) el que una abogada actúe como Oficial Investigadora en una pesquisa legislativa sobre la regularidad de una investigación anterior, en la que ella misma había participado, y (2) el que, concurrentemente y antes de concluido su desempeño como Oficial Investigadora, asuma la representación de un cliente cuyos planteamientos legales implican la irregularidad de la investigación anterior. Por entender que en ambas situaciones se incurre en un conflicto de

intereses, estamos conformes con la Sentencia emitida por el Tribunal en la queja presentada por el Senador Cirilo Tirado Delgado contra la Lcda. Nilka Marrero García.

I

La presente querella contempla dos instancias separadas de conflicto de intereses e incompatibilidad de funciones de parte de Marrero García. En primer término, cuestiona su rol como Oficial Investigadora de la Comisión Especial del Senado de Puerto Rico creada para indagar en la previa investigación senatorial sobre lo ocurrido en el Cerro Maravilla. Esto, por haber fungido como Fiscal Delegada del Fiscal Especial Independiente a cargo de la primera investigación.

En segundo término, impugna su representación de Ángel Figueroa Vivas, asumida también mientras ocupaba el cargo de Oficial Investigadora del Senado, en la solicitud de reapertura del procedimiento disciplinario que conllevó el desaforo permanente de este abogado. In re Colton Fontán, 128 D.P.R. 1 (1991).

La primera instancia podría implicar un conflicto de intereses en el ejercicio sucesivo de la profesión de abogada; la segunda, en su ejercicio simultáneo. Cualquier determinación sobre la existencia de dicho conflicto y sus consecuencias éticas ha de comenzar con un análisis de las circunstancias profesionales en las que se desempeñó Marrero García en cada instancia de prestación de servicios profesionales y de las gestiones que realizó. Veamos.

II

Entre febrero de 1992 y marzo de 1993, Marrero García fungió como Fiscal Delegada en la Oficina del Fiscal Especial Independiente (en adelante "F.E.I.") encargada de la investigación senatorial de los asesinatos ocurridos el día 25 de julio de 1978 en el Cerro Maravilla. Sus funciones le eran asignadas por el F.E.I. y podían comprender cualquiera de las facultades y poderes que la Ley Núm. 1 del 18 de enero de 1985 encomendaba a ese funcionario. Específicamente, el Art. 5 de dicha Ley autorizaba la delegación de la autoridad del F.E.I. en Fiscales Delegados "para investigar y procesar las acciones penales, civiles, administrativas y de ética profesional que procedan, en los abogados y funcionarios que estime necesario."

La potestad del F.E.I. comprendía "las facultades y los poderes que tiene el Departamento de Justicia, el Secretario de Justicia, el Procurador General, el Negociado de Investigaciones Especiales y cualquier otro funcionario u organismo al cual la ley le confiere autoridad para investigar y procesar acciones por violaciones a la ley penal y a las normas administrativas y profesionales". Art. 3 de la Ley Núm. 1 del 18 de enero de 1985. Estas facultades y poderes podían ejercerse en cualquier materia civil, criminal, administrativa o de ética profesional relacionada con los eventos ocurridos en el Cerro Maravilla.

El Fiscal Especial Independiente tendrá el deber y la autoridad de investigar todo lo relacionado con los incidentes del Cerro Maravilla

ocurridos el 25 de julio de 1978 para determinar la comisión de delitos por parte de funcionarios públicos o de otras personas, así como violaciones a reglamentos gubernamentales y a normas de buena conducta administrativa y profesional. Una vez hecha esa determinación tendrá el deber y la autoridad de representar al Pueblo de Puerto Rico y al Estado Libre Asociado en los procedimientos penales y en las acciones civiles, administrativas y de conducta profesional que procedan.  Art. 2 de la Ley Núm. 1 del 18 de enero de 1985.

En su desempeño, el Fiscal Especial Independiente, por sí o mediante sus delegados, podía "realizar toda clase de investigación de personas o documentos relacionados con su encomienda por lo que tendr[ía] acceso a los archivos y récords de todas las agencias del Gobierno".  Art. 3(3) de a Ley Núm. 1 del 18 de enero de 1985.  La Ley le facultaba para "acudir a los tribunales para exigir que se le entreg[ara] información que le [hubiese] sido denegada por parte de cualquier funcionario gubernamental o de ciudadanos particulares y podr[ía] cuestionar cualquier alegación de privilegio ejecutivo o de cualquier otro privilegio testimonial".  Art. 3(4) de la Ley Núm. 1 del 18 de enero de 1985.  Además, tenía autoridad para "iniciar y conducir todos los procedimientos ante el Tribunal Supremo para procesar cualquier conducta ilegal o impropia de fiscales o abogados en el ejercicio de sus funciones profesionales" y "solicitar del Tribunal Supremo de Puerto Rico que le conceda inmunidad profesional a los abogados que estime necesario para el cumplimiento de su encomienda de acuerdo con la ley".  Art. 3(8) y (12) de la Ley Núm. 1 del 18 de enero de 1985.

De acuerdo a dichas potestades, la Oficina del Fiscal Especial Independiente realizó vistas públicas para indagar sobre los eventos acaecidos en el Cerro Maravilla, rindió informes a los cuerpos legislativos sobre el particular, y presentó, en varias instancias, acusaciones criminales y querellas disciplinarias contra algunas de las personas involucradas en el asesinato de los dos jóvenes independentistas y su posterior encubrimiento. Una de dichas querellas éticas se presentó contra Ángel Figueroa Vivas, quien, para el 25 de julio de 1978, era Director del Negociado de Investigaciones Especiales del Departamento de Justicia.  A raíz de ese procedimiento disciplinario consiguiente, Figueroa Vivas fue permanentemente desaforado por este Tribunal.  In re Colton Fontán, 128 D.P.R. 1 (1991).

Las funciones del Fiscal Especial Independiente del Cerro Maravilla cesaron con la aprobación de la Ley Núm. 7 del 15 de abril de 1993, que eliminó dicha dependencia gubernamental.  Marrero García había cesado sus funciones en la misma un mes antes de su abolición.

Por los próximos tres años, Marrero García trabajó en la práctica privada. Entre el 21 de enero y el 28 de junio de 1996, la querellada gestionó la representación de Ángel Figueroa Vivas durante la presentación y trámite de una Petición Solicitando Reapertura de Procedimientos de Desaforo ante este Tribunal. Figueroa Vivas había sido separado permanentemente de la profesión de abogado por razón de su participación en el encubrimiento de los asesinatos ocurridos en el Cerro Maravilla el 25 de julio de 1978. La querella que motivó su desaforo fue presentada por la Oficina del F.E.I. a raíz de la investigación realizada al amparo de la Ley Núm. 1 del 18 de enero de 1985. In re Colton Fontán, supra.

En la Petición Solicitando Reapertura de Procedimientos, Marrero García alegó que, en el desaforo de Figueroa Vivas, la Oficina del F.E.I. ocultó prueba exculpatoria referente a su cliente y presentó testimonios falsos que lo vinculaban al encubrimiento del asesinato de Arnaldo Darío Rosado y Carlos Soto Arriví, lo que, de ser cierto, constituiría fraude al Tribunal.

En 1996 Marrero García regresó al servicio público, nuevamente en un asunto relacionado a los sucesos del Cerro Maravilla, aunque esta vez como Oficial Investigadora de una comisión especial del Senado encargada de investigar posibles irregularidades en las pesquisas legislativas sobre este asunto llevadas a cabo entre 1981 y 1992. Dicha encomienda surgió a raíz de la aprobación de la Resolución del Senado Núm. 1372 del 26 de enero de 1996, que tenía el propósito de encomendar a la Comisión de lo Jurídico del Senado la redacción de un reglamento que rigiera las investigaciones legislativas posteriores, la "investigación en torno a posibles irregularidades o actuaciones ilegales o impropias en el manejo de la pesquisa senatorial sobre los sucesos del Cerro Maravilla durante los años 1981 a 1992" y la radicación de un informe a ambos efectos.

El informe radicado atendía sólo parcialmente el mandato de la R. del S. 1372, en tanto se limitaba proponer la adopción del reglamento requerido. No obstante, el Senado adoptó dicho informe parcial como uno permanente y relevó a la Comisión de lo Jurídico de la pesquisa sobre la previa investigación del Cerro Maravilla. Delegó entonces esa función a una Comisión Especial.

Así las cosas, el 31 de mayo de 1996, Marrero García celebró un contrato con el Senado de Puerto Rico para la prestación de servicios profesionales por el que habría de desempeñarse como Investigadora de la Comisión de Ética

Gubernamental y Contra la Corrupción, realizando "labor (sic) de investigación en la Comisión" y aquellas "tareas relacionadas que le sean asignadas". Se le encargó, entonces, la función de conducir la investigación de la Comisión Especial sobre el Cerro Maravilla mediante nombramiento ratificado el 28 de junio de 1996 que entró en vigor el 1° de julio de ese mismo año.

Los deberes específicos de Marrero García surgían de las Resoluciones del Senado Núm. 1372 y 2001, y la facultaban a auscultar toda irregularidad cometida "en el proceso de investigación de los sucesos del Cerro Maravilla [entre 1981 y 1992] o en el proceso de presentación de testimonios relativos a este asunto de vistas públicas". R. del S. 2001. Por mandato expreso del Senado, debía enfocarse "en alegaciones que se han hecho al efecto de que miembros de la Comisión investigadora, u otras personas, instigaron, gestionaron o permitieron que se presentaran testimonios de personas que de antemano se sabía que no dirían la verdad en torno a los hechos que se investigaban". R. del S. 1372.

Las funciones de Marrero García en dicho puesto implicaban, pues, pasar juicio sobre el desempeño de la Oficina del Fiscal Especial Independiente, a la cual había pertenecido, y la investigación realizada por ésta.

Por entender que dichas labores implicaban a Marrero García en un conflicto de intereses, dado el historial de empleo de la abogada, el Senador Cirilo Tirado Delgado, miembro de la Comisión Especial creada por la R. del S. 2001, presentó una queja contra ella fundamentada en la incompatibilidad de sus funciones como Oficial Investigadora al simultáneamente representar a Figueroa Vivas, y al haber antes sido Fiscal Delegada del F.E.I. Pendiente el trámite de la querella, solicitamos a Marrero García que mostrase causa "por la cual no debamos acceder a la petición del quejoso [Senador Tirado Delgado] y ordenar que no intervenga en los procedimientos de la Comisión Especial del Senado, hasta tanto se adjudique la queja presentada en su contra". Además, le solicitamos que tomara la medida cautelar de no intervenir en los procedimientos de la Comisión referida. Resolución del 5 de julio de 1996. A raíz de dicho pronunciamiento, Marrero García renunció a su puesto de Oficial Examinadora.

Posteriormente, la queja quedó sometida a consideración del Procurador General, quien rindió su Informe el 25 de septiembre de 1996. Tras varios incidentes procesales, Marrero García contestó dicho Informe el 19 de febrero de 1999. Contando con ambas comparecencias, estamos en posición de resolver la querella.

III

Los hechos del caso ante nos presentan una situación atípica en el desempeño de la profesión legal, en cuanto al rol del abogado, y el surgimiento y manejo de los conflictos de interés. De un lado, resaltan el problema particular de la revisión de una investigación legislativa por el mismo cuerpo que la encomendó originalmente, situación que tiene implicaciones éticas para los abogados que participaron en la investigación original. Del otro, despuntan el rol investigativo del fiscal, distinto en su exigencia ética a la práctica adversativa tradicional.

A

Es bien sabido que la función del fiscal es, fundamentalmente, propiciar el descubrimiento de la verdad y la consecución de la justicia. In re Pacheco Nieves, 104 D.P.R. 566, 567 (1976), Voto Conc. y Dis. del Juez Negrón García, citado en In re Colton Fontán, supra, pág. 7. Particularmente en la etapa investigativa, está obligado a indagar en la realidad de los hechos del caso, no a probar o refutar una teoría preconcebida sobre la culpabilidad o inocencia de un acusado.

> Aun así, la intervención del Ministerio Fiscal en la fase de investigación no puede subestimarse. Puede afirmarse que esa es la etapa más importante de un proceso criminal, ya que servirá de fundamento a todo lo que puede acontecer posteriormente. "Una investigación deficientemente realizada puede dar lugar a que se cometan las injusticias de enviar a un inocente a la cárcel o evitar que el autor de unos hechos delictivos sea debidamente encausado". Informe sometido al Consejo sobre la Reforma de la Justicia en Puerto Rico por la Comisión para el Estudio de la Fiscalía y Representación del Estado de 26 de septiembre de 1974, pág. 114-S. In re Colton Fontán, supra, págs. 9-10 (Énfasis original omitido)

Este imperativo deontológico aplica a la Oficina del Fiscal Especial Independiente con la misma fuerza que al Ministerio Fiscal o al Procurador General, por ser análogas sus funciones en el plano inquisitivo. A estos efectos reiteramos que la Ley Núm. 1 del 18 de enero de 1985 "no alteró ni hizo más oneroso, como se alega, los derechos procesales y sustantivos que siempre hemos reconocido en acciones disciplinarias de abogados. No creó un procedimiento nuevo; simplemente trasladó de la Oficina del Procurador General a la del F.E.I. la encomienda investigativa y, de proceder, la

presentación y el procesamiento de la querella." <u>In re Colton Fontán</u>, supra,

103 (1991).

El rol del fiscal en la etapa investigativa de un procedimiento criminal

es cuasi-judicial.  Así lo define la doctrina y así lo han interpretado las

más recientes reglas éticas de la profesión.  Cf. Model Rules of Professional

Conduct, R. 3.8(a); A.B.A. Standards for Criminal Justice, 3-3.9.

> The investigating attorney is not a member of the adversary process and should perform a radically different role. During the investigation, where the elements of the adversary system and its safeguards are not yet defined, the prosecutor must fulfill a quasi-judicial role. The role of the investigating attorney is not that of an advocate but that of a neutral fact finder.  Roberta K. Flowers, <u>A Code of their own: Updating the Ethics Codes to include the non-adversarial roles of Federal Prosecutors</u>, 37 B.C. L. Rev. 923, 934 (1996).

Las características del quehacer investigativo del fiscal conllevan la

aplicación de responsabilidades éticas similares a las que obligan a otros

funcionarios de deberes análogos.  En casos en que un fiscal, o un abogado

que antes se haya desempeñado como tal, tenga a su cargo la defensa de una

persona en una controversia en la que participó como fiscal, es su deber

renunciar a la representación del cliente.  El criterio de inhibición esbozado

en el Canon XII de Ética Judicial resulta ilustrativo a estos efectos.

> La Jueza o el Juez no debe entender en procedimiento judicial alguno en que la ley le prohíba actuar, incluyendo, pero sin limitarse a cualesquiera de los casos siguientes:
>
> […]
>
> (c)  Por haber sido abogado o abogada, asesor o asesora de cualesquiera de las partes o de sus abogados en la materia en controversia, o fiscal en una investigación o procedimiento criminal en el que los hechos fueron los mismos presentes en el caso ante su consideración.
>
> (d)  Por haber presidido el juicio del mismo caso en un tribunal inferior o por haber actuado como magistrado a los fines de expedir la orden de arresto o citación para determinar causa probable en la vista preliminar de un procedimiento criminal.
>
> [...]
>
> (g)  Por cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia.
>
> [...]

El Juez o la Jueza deberá inhibirse tan pronto conozca de la causa de inhibición mediante resolución escrita en la que hará constar dicha causa, con notificación de la misma a todas las partes.

Las reglas modelo promulgadas por la A.B.A. también pueden servirnos de modelo. Reza el Estándar 3-1.3 de los <u>A.B.A. Standards for Criminal Justice: Prosecution Function and Defense Function</u>, 3ª ed. (1993), en lo pertinente:

(a)     A prosecutor should avoid a conflict of interest with respect to his or her official duties.

(b)     A prosecutor should not represent a defendant in criminal proceedings in a jurisdiction where he or she is also employed as a prosecutor.

(c)     A prosecutor should not, except as law may otherwise expressly permit, participate in a matter in which he or she participated personally and substantially while in private practice or nongovernmental employment unless under applicable law no one is, or by lawful delegation may be, authorized to act in the prosecutor's stead in the matter.

(d)     A prosecutor who has formerly represented a client in a matter in private practice should not thereafter use information obtained from that representation to the disadvantage of the former client unless the rules of attorney-client confidentiality do not apply or the information has become generally known.

(e)     A prosecutor should not, except as law may otherwise expressly permit, negotiate for private employment with any person who is involved as an accused or as an attorney or agent for an accused in a matter in which the prosecutor is participating personally and substantially.

Los conflictos de interés que involucran a fiscales y abogados de defensa no están necesariamente fundamentados en intereses financieros del abogado en cuestión, pues apelan al principio fundamental de la confianza pública en el sistema de justicia. Charles W. Wolfram, <u>Modern Legal Ethics</u>, sec. 7.6.5, págs. 404-06 (1986).

En conclusión, un abogado que se desempeñe como fiscal, o en una función investigativa análoga, está sometido a estándares éticos más estrictos que los que obligan a la profesión en general, pues no sólo viene obligado a cumplir con los cánones que rigen la profesión de la abogacía, sino también de demostrar imparcialidad en su función inquisitiva. Hacer de otro modo, gestionar una investigación "con la idea prematura y preconcebida de apoyar y oficializar [una] teoría", no es "sólo un grave error profesional, sino ético." <u>In re Colton Fontán</u>, supra, pág. 94.

B

Nada sugiere que los deberes de Marrero García- surgiesen éstos de su contrato o de las resoluciones del Senado- limitaban su investigación a las actuaciones de funcionarios de la rama legislativa. Por el contrario, abarcaban todos los aspectos de la previa pesquisa, inclusive, valga aclarar, el desempeño de los integrantes de la Oficina del Fiscal Especial Independiente del Cerro Maravilla. De su faz, se presenta un potencial conflicto de interés, al ser la querellada quien investiga una oficina de la cual ella misma formó parte. La pesquisa que estaba llamada a realizar, a la luz de las Resoluciones del Senado Núm. 1372 y 2001, podía concebiblemente extenderse a aquella etapa en la existencia de la Oficina del F.E.I. en la que ella allí laboraba.

Es testimonio reiterado que "las dudas sobre cuestiones de ética profesional debe resolverlas el abogado con rigurosidad contra sí mismo." In re Valentín González, 115 D.P.R. 68, 73 (1984). Constituyó, pues, una falta ética de parte de Marrero García, por implicar un conflicto de intereses, el asumir el cargo de Oficial Examinadora del Senado habiendo formado parte previamente de la Oficina del Fiscal Especial Independiente del Cerro Maravilla.


C

De ordinario son los fiscales, y aquellos funcionarios que cumplen funciones análogas, quienes tienen mayor acceso a información exculpatoria sobre las personas llamadas a responder ante los foros del Estado. Dicho acceso privilegiado a esta información, conjuntamente con su obligación de procurar que se haga justicia en los procedimientos criminales les impone el deber coetáneo de revelar cualquier evidencia exculpatoria que tengan en su poder. Reglas de Proc. Crim., R. 95(b). Sin embargo, es más que evidente que el imperativo ético consagrado en el Canon 5 de conducta profesional no compele a dichos funcionarios a asumir la representación de los acusados que aparenten inocencia. Todo lo contrario, el ejercicio del Ministerio Público les prohíbe la representación de los beneficiarios de esta prueba, tanto por disposición expresa de la ley, 3 L.P.R.A. sec. 97, como por el deber ético de evitar el conflicto de intereses. In re Corona Muñoz I, res. el 11 de octubre de 1996, 141 D.P.R. ___ (1996).

En el caso de autos, la representación de Figueroa Vivas en el proceso de reapertura de procedimientos de desaforo presenta además un doble conflicto de intereses para Marrero García, a raíz de los argumentos. Para lograr que este Tribunal reabra el procedimiento de desaforo contra Figueroa Vivas, concluido en 1992, Marrero García ha argumentado que hubo serias anomalías en los procedimientos investigativos de la Oficina del F.E.I. relacionados al caso de Figueroa Vivas.

De un lado, hacer este planteamiento puso en duda la objetividad e imparcialidad que ha de esperarse de Marrero García como Oficial Investigadora de una comisión legislativa, pues implicó un ánimo prevenido al descubrimiento de irregularidades y actuaciones

impropias de parte del F.E.I. sin haber concluido la investigación que le había sido encomendada. Ya hemos mencionado que, a partir de nuestros pronunciamientos en In re Colton Fontán, supra, tal cavilación prematura es una falta profesional y ética.

Por otro lado, Marrero García arriesgaba un conflicto de intereses en sentido contrario, ante la posibilidad de que una pesquisa cabal del desempeño de la Oficina del F.E.I. se extendiese a investigar posibles incidencias de error o infracción a la ley en dicha dependencia durante el periodo en que la querellada allí laboraba. El desempeño diligente de su cargo como abogada de Figueroa Vivas sembraría dudas en cuanto a su diligencia como defensora de los mejores intereses de su cliente, pues podría requerir planteamientos que le serían a ella perjudiciales.

A estos efectos, habremos de considerar bien intencionado el argumento esbozado por la querellada en cuanto a su obligación, como abogada y ex-fiscal delegada, de hacer llegar a los debidos foros toda información o prueba en su poder que exculpe a cualquier acusado, convicto o querellado. Dicho deber, sin embargo, no implica asumir la representación de quien había de beneficiarse de esta prueba. Al hacerlo no sólo se excedió de su responsabilidad como funcionaria del Estado que ejercía una función cuasi-judicial, sino que comprometió la confiabilidad pública en la investigación que realizaba e incurrió en un inexcusable conflicto de intereses.

IV

No obstante, estamos convencidos de que en la conducta de Marrero García no medió intención de violentar los principios éticos de la profesión. Constituyó, sin embargo, un grave error de juicio con serias y nefastas consecuencias a la confianza que el público ha de tener en la profesión legal y en las instituciones de gobierno. Independientemente de las motivaciones que tuviere la Asamblea Legislativa en la investigación ordenada por las R. del S. 1372 y 2001, lo cierto es que la participación de Marrero García como Oficial Investigadora dio visos de ilegitimidad a esa pesquisa.

No obstante, tomamos en consideración, que la abogada querellada acatara, e incluso superara, los términos de la Resolución emitida por este Tribunal el 5 de julio de 1996 que le ordenaba a la querellada "tom[ar] por su cuenta la medida cautelar de no intervenir de ninguna manera en las referidas vistas senatoriales hasta tanto ella responda a la orden de mostrar causa, en vista de que existe, al menos, un aparente conflicto de interés." En respuesta a esta Resolución, ella dejó de recibir prueba y citar testigos en relación a la investigación sobre el Cerro Maravilla y, el 1º de agosto

de 1996, renunció a su cargo como Oficial Investigadora.  Consideramos su acción como elemento muy atenuante de la violación ética descrita anteriormente.

Si además tomamos en consideración el buen historial profesional de la querellada, que ésta es la primera vez que incurre en una violación ética, y que además hasta este momento este Tribunal no se había pronunciado sobre este tipo de conflicto de intereses, estamos conformes con la decisión mayoritaria de limitar la sanción disciplinaria a una amonestación de la Lcda. Nilka Marrero García por haber incurrido en conducta constitutiva de conflicto de intereses y deficiencia en el desempeño de la profesión.


                         Federico Hernández Denton
                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Nilka Marrero García

AB-1996-67

Opinión Concurrente emitida por el Juez Asociado señor FUSTER BERLINGERI

San Juan, Puerto Rico, a 18 de abril de 2001.

El caso de autos es realmente bastante sencillo, por lo que no amerita ninguna extensa consideración por este Tribunal. La querellada cometió sin dudas un **error de juicio**, al colocarse en un **potencial** conflicto de interés por aceptar en 1966, durante alrededor de un mes, el cargo de Oficial Examinador del Senado de Puerto Rico, para la re-investigación de los sucesos del Cerro Maravilla. Esos trágicos y vergonzosos sucesos fueron investigados en diversas maneras y por distintos foros por espacio de doce (12) años, durante el período de 1981-1993, y la querellada estuvo brevemente relacionada con una parte menor de estas investigaciones por espacio de un año durante 1992-

1993. En vista de su contacto previo con una de las investigaciones oficiales anteriores, por mínimo que haya sido, no debió haber aceptado el cargo referido en el Senado en 1996.

El contrato de la querellada con el Senado de Puerto Rico para conducir la re-investigación referida entró en vigor el 1 de julio de 1996. Sólo un mes más tarde, el 1 de agosto de 1996, la querellada renunció a su puesto en el Senado, a raíz de la recomendación que le hicimos en una Resolución nuestra de 5 de julio de 1996, de que tomara por su cuenta el paso de no intervenir en el asunto, como medida cautelar en lo que se examinaba la queja en su contra presentada ante nos sobre el particular, que es la que atendemos ahora aquí. Con encomiable diligencia, la querellada acató nuestra recomendación de inmediato, e incluso renunció al cargo.

La querellada evidentemente no tuvo el propósito de violar los principios éticos de la profesión, como se evidencia por la pronta y decisiva acción que tomó al intimársele su error. En vista de ello, la conducta incorrecta de la querellada no amerita nada más que una simple amonestación de nuestra parte, sin mucha enjundia. Por ello, concurro con el resultado dispuesto en la sentencia del Tribunal.


                                        JAIME B. FUSTER BERLINGERI
                                        JUEZ ASOCIADO