EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Elfrén García Muñoz | Queja <br><br> 2003 TSPR 175 <br><br> 160 DPR _____ |

Número del Caso: AB-2002-320

Fecha: 5 de diciembre de 2003

Oficina del Procurador General:

       Lcda. Yvonne Casanova Pelosi
       Procuradora General Auxiliar

Abogado de la Parte Querellada:

       Por Derecho Propio

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Elfrén García Muñoz

AB-2002-320

PER CURIAM

San Juan, Puerto Rico, a 5 de diciembre de 2003

> *"El toque está en exigir de todos nosotros, de cada uno de nosotros, la aportación precisa para que cada finalidad se convierta en obra y cada esperanza en historia."*[1]

La conducta que da lugar a la presente acción disciplinaria tiene su génesis en el caso de Pueblo v. Christian Ortiz Rivera, adjudicado ante el Tribunal de Primera Instancia, Sala Superior de Aibonito.[2] En dicho caso el tribunal, confrontado

---

[1] Antonio S. Pedreira, Insularismo, Río Piedras, Ed. Edil, 1971, pág. 170 (citado en Antonio S. Negrón García, *Nueva visión de la función social del abogado*, 30 Rev. Jur. U.I.P.R. 333, 334-35 (1996).

[2] Dicho caso culminó en la etapa de vista preliminar, luego de una determinación de "no causa" en todos los delitos imputados.

con la situación de que la Sociedad para Asistencia Legal no podía, por razón de conflicto de intereses, representar al ciudadano Christian Ortiz Rivera --a quien se le imputaba la supuesta comisión de un delito de Tentativa de Asesinato e infracción al Art. 5.05 de la Ley de Armas-- designó como abogado de oficio al Lcdo. Elfrén García Muñoz.[3]

Luego de enterarse de la referida designación, los familiares del imputado se comunicaron con el licenciado García Muñoz quien les informó que desde el año 1998 no tenía oficina ya que la misma había sido destruida por el Huracán Georges. Asimismo, les explicó que debido a esta situación se había visto obligado a acogerse a la Ley de Quiebra y que desde entonces no estaba aceptando casos --ni criminales ni civiles-- ya que no contaba con medios económicos suficientes para cubrir los costos de los procesos judiciales. La madre del acusado le informó al referido abogado que prefería contratar a un abogado privado, pero que el que había consultado les cobraba demasiado. El licenciado García le indicó que "lo bueno no necesariamente era lo más costoso" y que haría un esfuerzo para con su hijo pero que necesitaba que lo ayudaran con los gastos del proceso, a lo que ésta asintió informándole que en los próximos días le haría llegar la suma de

---

[3] Admitido por este Tribunal al ejercicio de la abogacía el 13 de mayo de 1980 y al del notariado el 19 de agosto de 1980.

$150.00 dólares. El dinero fue entregado al licenciado García Muñoz por el propio acusado Christian Ortiz Rivera.

Así las cosas, el 10 de septiembre de 2002, el licenciado García Muñoz compareció ante el tribunal de instancia y solicitó la posposición de la vista preliminar, la cual fue reseñalada para el 5 de noviembre de 2002. El 4 de octubre de 2002, Ortiz Rivera presentó ante el foro de instancia una declaración jurada en la cual sostuvo que el abogado de oficio que el tribunal le había asignado --refiriéndose al licenciado García Muñoz-- le estaba "cobrando [por] sus servicios". En vista de tal situación, el foro de instancia ordenó la celebración de una vista, la cual se llevó a cabo el 23 de octubre de 2002.

Llegado este día, y a preguntas del magistrado, el licenciado García Muñoz testificó que había recibido de manos del acusado la suma de $150.00 dólares, aceptando que conocía sobre su designación como abogado de oficio al momento de recibir el referido pago. En vista de ello, el 29 de octubre de 2002, el Honorable Ramón Rojas Peña elevó a este Tribunal una petición para que, en el ejercicio de nuestra jurisdicción disciplinaria, evaluáramos la conducta del licenciado Elfrén García Muñoz. Referimos este asunto al Procurador General para la investigación e informe correspondiente, el cual presentó el 15 de abril de 2003.

En su Informe, el Procurador General califica como "improcedente" el pago de $150.00 dólares recibido por el licenciado García Muñoz y concluye que, al requerir el mismo, el querellado obvió el procedimiento dispuesto en el "Reglamento para la Asignación de Abogados o Abogadas de Oficio en Procedimientos de Naturaleza Penal", 4 L.P.R.A. Ap. XXVIII, específicamente en lo que respecta a la compensación por gestiones de oficio y al pago por los gastos incurridos durante el proceso judicial. Además, concluyó el Procurador que, con su conducta, el licenciado García "incurrió en actos contrarios al Canon 38 de Ética Profesional, el cual obliga a todo abogado a esforzarse al máximo de su capacidad en la exaltación del honor y dignidad de la profesión, aunque el así hacerlo conlleve sacrificios personales. ..."

Mediante Resolución de 30 de abril de 2003, le concedimos término al licenciado García Muñoz para que se expresara respecto al Informe rendido por el Procurador General. En su comparecencia, el querellado "reconoce y acepta haber cometido un error de juicio al aceptar ayuda de los familiares del imputado y pide excusas al Tribunal". Además, "suplica que en la aplicación de cualquier sanción que tenga a bien considerar este Honorable Tribunal, a la cual humildemente [se] somet[e] y acept[a], se tome en consideración los largos años que h[a] dedicado a la representación de los indigentes trabajando en Servicios Legales, como miembro de Pro-Bono

del Colegio de Abogados y sirviendo gratuitamente como abogado de oficio por designación de los Tribunales que componen la jurisdicción del Tribunal de Primera Instancia de Aibonito. ..."

No existiendo controversia sobre los hechos del presente caso es innecesario que designemos un Comisionado Especial para que rinda un informe con sus determinaciones. *In re* Irizarry Vega, res. 24 de agosto de 2000, 2000 T.S.P.R. 128; *In re* Davison Lampón, res. el 12 de mayo de 2003, 2003 T.S.P.R. 92. Siendo así, procedemos a resolver la controversia planteada sin necesidad de trámites ulteriores.[4]

I

Existe un claro e inequívoco mandato constitucional a los efectos de que todo imputado de delito tiene derecho a tener asistencia de abogado en todo proceso criminal que se lleve en su contra.[5] CONST. P.R. art. II, sec. 11; CONST. E.U. emda. VI. Esta garantía abarca dos aspectos fundamentales; a saber: (i) el derecho a contar con una representación adecuada y efectiva y (ii) el derecho a que el Estado provea representación legal gratuita en casos de

---

[4] Véase Regla 14(e)(h) del Reglamento del Tribunal Supremo de Puerto Rico de 1 de mayo de 1996.

[5] Del mismo modo, la Sexta Enmienda de la Constitución de los Estados Unidos dispone que: "[i]n all criminal prosecutions the accused shall enjoy the right to have the assistance of counsel for his defense."

indigencia.[6] Este derecho a tener representación legal en casos criminales se ha consagrado como parte fundamental de la cláusula del debido proceso de ley. *In re* Rodríguez Santiago, res. el 15 de mayo de 2002, 2002 T.S.P.R. 74; Ramos Acevedo v. Tribunal Superior, 133 D.P.R. 599, 609 (1993); Pueblo v. Moreno González, 115 D.P.R. 298, 306 (1984); Pueblo v. Gordon, 113 D.P.R. 106, 108 (1982).[7]

Nuestras Reglas de Procedimiento Criminal se hacen eco del mandato constitucional antes mencionado en sus Reglas 57 y 159, 34 L.P.R.A. Ap. II R. 57 y 157, las cuales establecen que en todo proceso criminal el tribunal vendrá obligado a informarle al acusado de su derecho a asistencia de abogado y que si el acusado interesa tener representación legal, y no cuenta con los medios para pagarla, el tribunal, sin costo alguno, designará un abogado que lo represente. Hemos reconocido la existencia de este derecho en la etapa investigativa, cuando ésta toma carácter acusatorio; en el acto de lectura de

---

[6] U.S. v. Cronic, 466 U.S. 648, 654 (1984); Gideon v. Wainwright, 372 U.S. 335 (1963); Griffin v. Illinois, 351 U.S. 12 (1956); Powell v. Alabama, 287 U.S. 45 (1932). Véase, además: Informe emitido por el Comité Asesor sobre Asignación de Abogados de Oficio el 12 de abril de 1995.

[7] En Estados Unidos véase: Wheat v. United States, 486 U.S. 153 (1988); United States v. Ash, 413 U.S. 300 (1973); Gideon v. Wainwright, ante; Johnson v. Zerbst, 304 U.S. 458 (1938); Powell v. Alabama, ante.

acusación; durante el juicio; al dictarse sentencia; y en la etapa apelativa.[8]

Ahora bien, es importante recalcar que la obligación de proveer servicios legales gratuitos a los indigentes <u>no</u> es exclusiva del Estado. <u>Ramos Acevedo</u> v. <u>Tribunal Superior</u>, ante, a las págs. 611-15. La misma es compartida con la clase togada del País, quienes, al ser admitidos al ejercicio de la profesión, juran solemnemente que desempeñarán con <u>lealtad</u> los deberes y responsabilidades que como abogados del Estado Libre Asociado de Puerto Rico les impone la Ley y el Código de Ética Profesional. *Ibid*. Precisamente, uno de los deberes que impone el Código de Ética, específicamente en su Canon 1, es el de luchar continuamente para garantizar que "toda persona tenga acceso a la representación capacitada, íntegra y diligente de un miembro de la profesión legal." 4 L.P.R.A. Ap. IX.

El referido Canon establece, además, que "[e]n la consecución de este objetivo el abogado debe aceptar y llevar a cabo toda encomienda razonable de rendir servicios legales gratuitos a indigentes, especialmente en lo que se refiere a la defensa de acusados y a la representación legal de personas insolventes." *Ibid*. También dispone que "es obligación del abogado ayudar a establecer medios apropiados para suministrar servicios

---

[8] Véanse: <u>Pueblo</u> v. <u>Ortiz Couvertier</u>, 132 D.P.R. 883 (1993); <u>Pueblo</u> v. <u>Sánchez Vega</u>, 95 D.P.R. 718 (1968);
(Continúa . . .)

legales adecuados a todas las personas que no pueden pagarlos." *Ibid*. La referida obligación "incluye la de apoyar los programas existentes y la de contribuir positivamente a extenderlos y mejorarlos." *Ibid*. Naturalmente, "[l]a ausencia de compensación económica en tales casos no releva al abogado de su obligación de prestar servicios legales competentes, diligentes y entusiastas." *Ibid*.

La validez de esta obligación fue cuestionada en Ramos Acevedo v. Tribunal Superior, ante. En dicho caso, al sostener la constitucionalidad de los estatutos que la imponen --tanto de su faz como en su aplicación--, expresamente resolvimos que se trata de una clasificación no sospechosa producto de una reglamentación de tipo socioeconómica y que, por lo tanto, su validez depende de que se cumpla con el criterio de "nexo racional". De este modo sostuvimos que la práctica impugnada resultaba ser un medio razonablemente conducente a la consecución del interés legítimo perseguido por el Estado: que todo imputado de delito cuente con una adecuada y efectiva asistencia de abogado.

Ciertamente, como "oficial del tribunal", y en virtud de la naturaleza y función eminentemente pública de su profesión, el abogado está obligado a cooperar con el Estado en la consecución de dicho interés.

---

Rivera Escuté v. Jefe Penitenciaría, 92 D.P.R. 765 (1965);
(Continúa . . .)

A tono con lo anterior, en *In re* Rodríguez Santiago, ante, reconocimos como "un deber impuesto por ley" la representación de oficio, entiéndase, la prestación gratuita de servicios legales por parte de nuestra clase togada. Asimismo, sostuvimos que todo abogado admitido a ejercer la profesión en nuestra jurisdicción tiene la obligación ética de asumir la representación legal de un indigente cuando así es validamente designado por un tribunal. Refiriéndonos a tal obligación, señalamos que "la misma debería ser, ante todo una vocación, un llamado a contribuir al mejoramiento de las condiciones de vida de los menos afortunados." Del mismo modo, y aun cuando reconocimos que "la prestación de servicios legales gratuitos es sinónimo de sacrificio", enfatizamos el hecho de que "el desempeño de dicha labor provee grandes satisfacciones y recompensas tanto para el abogado particular como para la profesión en general." Es imperativo que reconozcamos que nos encontramos ante una obligación y no ante un acto de caridad.

Ahora bien, es importante señalar que en Ramos Acevedo v. Tribunal Superior, ante, reconocimos la necesidad de realizar un estudio abarcador y profundo sobre el "sistema" que debía imperar en nuestros tribunales al asignarse abogados de oficio en procedimientos de naturaleza penal. A tales efectos

---

Soto Ramos v. Supert. Granja Penal, 90 D.P.R. 731 (1964).

ordenamos al Secretariado de la Conferencia Judicial que realizara el análisis correspondiente, luego de lo cual --según sostuvimos-- estaríamos en mejor posición de implantar un sistema uniforme a esos efectos. Consecuencia de ello fue que en el año 1998 este Tribunal aprobó el "Reglamento para la Asignación de Abogados o Abogadas de Oficio en Procedimientos de Naturaleza Penal".

Este Reglamento dispone para que toda persona sometida a un procedimiento de naturaleza penal, que mediante evidencia jurada demuestre su estado de indigencia, tenga derecho a solicitar --y a obtener-- la asignación de un abogado de oficio pagado por el Estado. En atención a la presente controversia, es de particular importancia lo preceptuado en la Regla 25 del mencionado Reglamento. Dicha Regla dispone que:

> Todo abogado o abogada de oficio tendrá derecho a recibir compensación por sus servicios y al reembolso de los gastos necesarios y razonables en que incurra en la defensa de un indigente. Tanto la compensación como el reembolso estarán sujetos a la aprobación del tribunal a tenor con las disposiciones de este Capítulo.

De este modo fue atendida la preocupación expresada en Ramos Acevedo v. Tribunal Superior, ante, a la pág. 617, a los efectos de que "todo abogado que sea designado de oficio para representar a un indigente tiene derecho a que el Estado le pague todos los gastos, necesarios y razonables, en que él incurra en la defensa de dicho cliente indigente", pues "[l]a obligación impuesta por los

citados cánones del Código de Ética Profesional no debe
acarrear la aportación del abogado de dinero de su propio
peculio."[9] Como vemos, en la precitada Regla también se
dispuso para que, bajo ciertas y determinadas
circunstancias, el abogado de oficio reciba compensación
por los servicios legales ofrecidos.[10]

Ahora bien, es importante advertir que la Regla 31
del Reglamento para la Asignación de Abogados de Oficio
expresamente dispone que el Estado deberá pagar, o hacer,
la compensación por los servicios rendidos, y el reembolso
de los gastos razonables, al final de los procedimientos.[11]

---

[9] A tales efectos se ha señalado que: "[a]lthough an
attorney may be constitutionally compelled to represent an
indigent defendant without compensation, the attorney
cannot be compelled to pay the expenses of criminal
defense work without reimbursement, since this would
constitute taking the attorney's property without just
compensation." 7 Am. Jur. 2d Attorneys al Law sec. 260.

[10] Sobre este particular la Regla 26, 4 L.P.R.A. Ap. XXVIII
R.26, aclara que la referida compensación tendrá lugar
luego de que el abogado haya ofrecido un mínimo de 50
horas de servicio gratuito al año. Ello significa que todo
abogado de oficio está en la obligación de prestar
gratuitamente un mínimo de 50 horas anuales, sin esperar
que el Estado le compense por las mismas. Naturalmente,
dicha condición no aplica en aquellos casos en que se
trate de gastos susceptibles de reembolso a tenor con lo
dispuesto en la Regla 28 del Reglamento para la Asignación
de Abogados de Oficio. 4 L.P.R.A. Ap. XXVIII R.29.

[11] En cuanto al procedimiento a seguir al solicitar dicho
pago, la Regla 30 del Reglamento bajo análisis, 4 L.P.R.A.
Ap. XXVIII R.30, dispone lo siguiente:

> Una vez finalice el procedimiento de naturaleza
> penal para el cual fue asignado, el abogado o la
> abogada de oficio presentará mediante moción
> jurada, y dentro del término de diez (10) días
> contados a partir de la notificación de la
> disposición final del procedimiento, un informe

(Continúa . . .)

Ello no obstante, la mencionada Regla dispone que "de presentarse circunstancias justificadas, el tribunal, previa solicitud, tendrá la facultad de autorizar pagos parciales." Ello significa que todo abogado que sea designado de oficio podrá solicitar del tribunal, previo a que finalicen los procedimientos, el reembolso de los gastos incurridos o el pago de ciertos gastos necesarios, siempre que demuestre que las circunstancias particulares del caso así lo ameritan.

## II

Tal y como señaláramos anteriormente, en el caso de autos el licenciado Elfrén García Muñoz fue designado como abogado de oficio del querellante luego de que la Sociedad para Asistencia Legal informara sobre la existencia de un

---

sobre el trabajo realizado, las horas invertidas, las costas y los gastos razonables en que incurrió. Este informe constituirá la solicitud de pago de la compensación por servicios y de reembolso de costas y gastos en que se ha incurrido.

Si el procedimiento fue celebrado ante un foro judicial, se presentará la moción ante el juez que presidió el caso. Si el procedimiento fue celebrado en un foro extrajudicial se presentará la moción ante el juez o la jueza que hizo la determinación de indigencia.

El Juez Administrador o la Jueza Administradora o el funcionario por él o ella designado aprobará el pago de la compensación y reembolso de costas y gastos mediante resolución u orden dentro de un término razonable y deberá enviar la misma a la Oficina de Administración de los Tribunales para los trámites correspondientes. Véase en general, 4 L.P.R.A. Ap. XXVIII R. 31.

conflicto de interés que le impedía asumir la representación de su caso. Informado sobre la referida designación, el licenciado García Muñoz solicitó de los familiares del acusado que lo "ayudaran" con los gastos del proceso recibiendo, de manos del propio querellante, la suma de $150.00 dólares.

En un intento por explicar su proceder el querellado aduce que solicitó el dinero para cubrir parte de los gastos de los procedimientos, pues su situación económica le impedía "correr con los costos de los procesos" relativos a los casos que el tribunal le asignaba en calidad de abogado de oficio. A tales efectos sostiene que no cuenta con los recursos necesarios para hacerse cargo de los casos asignados y que en varias ocasiones ha solicitado del Juez Administrador del Tribunal de Instancia de Aibonito la exclusión de su nombre de las listas de los abogados que postulan ante dicho foro, pues "no puede agravar [su] situación gastando lo que no t[iene] en casos asignados que requieren una gran cantidad de recursos económicos." De esta forma el licenciado García Muñoz pretende justificar su actuación, denominando la misma como un mero "error de juicio".

Estamos impedidos de minimizar a tal grado la falta incurrida por el licenciado Elfrén García Muñoz. No cabe duda que con el presente caso se ejemplifica la necesidad de que nuestros abogados se mantengan al día en el estudio de las disposiciones legales que reglamentan esta

profesión así como la doctrina y jurisprudencia que componen nuestro ordenamiento jurídico. Como es sabido el Canon 2 de Ética Profesional, 4 L.P.R.A. Ap. IX C.2, le impone a la clase togada la obligación de realizar esfuerzos para lograr y mantener un alto grado de excelencia y competencia en su profesión a través del estudio y la participación en programas educativos.

Esta obligación es personalísima del abogado, pues el conocimiento de la normativa vigente --ya sea jurisprudencial, reglamentaria o legislativa-- constituye su principal herramienta de trabajo y sin ella se imposibilita el ejercicio del mismo. ¿Cómo pretender que nuestros abogados exhiban un alto grado de excelencia y competencia si están huérfanos de las herramientas de trabajo que les exige su vocación al no conocer las normas más básicas que rigen nuestro ordenamiento jurídico? ¿Cómo podríamos gozar de un orden jurídico íntegro y eficaz, que goce de la completa confianza y apoyo de la ciudadanía, si los miembros de nuestra profesión jurídica desconocen las pautas y linderos de su profesión?

No hace falta que indaguemos demasiado en el presente asunto para percatarnos que el licenciado García Muñoz desconocía totalmente las disposiciones del Reglamento para la Asignación de Abogados de Oficio que regulan todo lo relativo al reembolso de los gastos incurridos en su designación de oficio. Sin lugar a dudas, dichas disposiciones proveían al licenciado García varios cursos

de acción ante la imperiosa necesidad económica que hoy nos presenta. Veamos.

La Regla 22 del Reglamento bajo análisis provee para que todo abogado pueda levantar ante el foro denominador cualquier reparo --ya sea de tipo profesional o personal-- que a su juicio le impida ejercer como abogado de oficio en el caso particular que le haya sido asignado.[12] En virtud de tal disposición reglamentaria el licenciado García Muñoz bien pudo haber presentado ante el foro de instancia los reparos de índole económica que le impedían ejercer sus funciones como abogado de oficio solicitando, a su vez, del tribunal que le eximiera de tales funciones y asignara el caso a otro abogado.[13]

Otra alternativa provista en el Reglamento para la Asignación de Abogados de Oficio para casos como el que hoy nos ocupa la encontramos en la Regla 31 del referido cuerpo reglamentario. Ésta dispone para que el abogado pueda recibir pagos parciales de los gastos incurridos, sin necesidad de que tenga que esperar a que finalice el procedimiento en cuestión. El único requisito que se

---

[12] Según dispone la mencionada disposición, éste es uno de los elementos que el tribunal deberá considerar al determinar si el abogado cuyo nombre está en turno en la lista correspondiente debe ser designado como abogado de oficio.

[13] Naturalmente, este relevo dependerá de las circunstancias muy particulares de cada caso, siendo necesario que el abogado presente evidencia a los efectos de que su condición económica le impide ejercer, de forma
(Continúa . . .)

impone a tales efectos es que, al solicitar dicho pago, el abogado demuestre que existen circunstancias de peso que así lo justifiquen.[14]

Vemos pues que si el querellado optaba por aceptar la designación de oficio, sin levantar el reparo relacionado a su capacidad económica, aún tenía la alternativa de recibir --prontamente-- el reembolso de las sumas invertidas, solicitando pagos parciales que le permitieran continuar la representación del acusado, sin necesidad de ver seriamente afectadas sus finanzas personales. Pero, ¿qué hizo el licenciado García? Optó por requerirle a los familiares de su representado una "ayuda económica" que le permitiera tramitar su caso, ignorando por completo las disposiciones que desde el año 1998 regulan esta materia.

Al así actuar el licenciado García, no sólo violó los Cánones 1 y 2 de Ética Profesional, sino que, además, infringió el Canon 38 en la medida en que su actuación constituyó una apariencia de conducta impropia la cual, según hemos señalado, "puede tener un efecto tan dañino sobre la imagen, confianza y respeto del público por su[s] [instituciones], como la verdadera impropiedad ética."[15] _In_

---

capacitada y competente, la representación legal que le ha sido asignada.

[14] Según se expresó en el Informe rendido por el Comité Asesor sobre Asignación de Abogados de Oficio, esta disposición fue incluida en el Reglamento bajo análisis con el propósito principal de evitar posibles dificultades económicas entre los abogados que atienden los casos de oficio asignados por nuestros tribunales.

(Continúa . . .)

*re* Vélez Barlucea, res. el 26 de octubre de 2000, 2000 T.S.P.R. 158.

Debe quedar claro que la acción de solicitar "ayuda económica" del representado indigente —o de sus familiares— no será tolerada por este Tribunal bajo ninguna circunstancia pues, con tal práctica, se mancilla el derecho a asistencia de abogado que precisamente pretendió protegerse con la promulgación del Reglamento para la Asignación de Abogados de Oficio. Como hemos señalado, el referido cuerpo de reglas provee alternativas viables para que los abogados puedan lidiar con los embates económicos por los que puedan atravesar, sin necesidad de que incurran en violaciones éticas y sin que se pueda ver afectado el derecho a asistencia de abogado que cobija a todo imputado de delito. Resolvemos, en consecuencia, que bajo ningún concepto podrá un abogado de oficio solicitar, del acusado o sus familiares, honorarios adicionales a los provistos en el Reglamento para la Asignación de Abogados de Oficio.[16]

---

[15] Refiriéndonos al deber impuesto por este Canon, en *In re Coll Pujols*, 102 D.P.R. 313, 319 (1974), señalamos que "[c]ada abogado es un espejo en que se refleja la imagen de la profesión. Sus actuaciones reflejan ante la comunidad las bases del concepto que ésta se forme, no solamente del abogado en particular que acta, sino también de la clase profesional toda que debe representar con limpieza, lealtad, y el más escrupuloso sentido de responsabilidad."

[16] Sobre este particular se ha señalado que: "since an attorney is an officer of the court, he may be required to
(Continúa . . .)

III

Este caso versa sobre un miembro de la profesión jurídica que <u>solicitó</u> dinero en un caso que le fuera asignado por el tribunal en su calidad de abogado de oficio. Tal conducta, <u>repetimos</u>, no puede ser, de ninguna manera, sostenida ni avalada por este Tribunal. Resolver lo contrario, no sólo pondría en jaque la institución del abogado de oficio en nuestra jurisdicción, sino que, además, afectaría la confianza de la ciudadanía en nuestras instituciones, perdiéndose por completo la fe que en la justicia mantienen las clases menos favorecidas de nuestro País.

En su escrito ante nos, el licenciado García Muñoz llama nuestra atención en torno al hecho de que en su actuación no medió intención maliciosa alguna ni mala fe. A tales efectos nos suplica que al determinar la sanción que hemos de imponer consideremos los largos años que ha dedicado a la representación de los indigentes, trabajando

---

defend an accused person and accept such compensation, within the limits of the statute or rule, as the court may allow, and ordinarily the amount allowed by the court must represent the exclusive compensation of the attorney, and he has no right to contract with other persons for fees." <u>In re L.E.C.</u>, 301 S.E.2d 627 (W.Va. 1983) (citando a 7A C.J.S. Attorney & Client sec. 301 (1980)); James R. Higdon, *Court Appointed Attorneys Receiving Compensation from their Client or Their Client's Family*, 18 J. LEGAL PROF. 311 (1993). Véase, además: <u>Hale</u> v. <u>Brewster</u>, 467 P.2d 8,11 (N.M. 1970) donde se expresó que "the promise to do what a person is already obligated by law or contract to do is not sufficient consideration for a promise made return."

en Servicios Legales, como miembro de Pro-Bono y en calidad de abogado de oficio.

Como hemos resuelto en reiteradas ocasiones, al determinar la sanción disciplinaria que habrá de imponerse a un abogado que haya incurrido en conducta impropia, habremos de considerar como atenuantes, entre otras cosas, la reputación del abogado en su comunidad; el previo historial de éste; si es su primera falta; la aceptación de la falta y su sincero arrepentimiento; si se trata de una conducta aislada; el ánimo de lucro que medió en su actuación; resarcimiento al cliente y cualesquiera otras consideraciones ya bien atenuantes o agravantes que medien de acuerdo a los hechos. *In re* Soto Cardona, 143 D.P.R. 50 (1997); *In re* Héctor Cordero, res. el 5 de septiembre de 2002, 2002 T.S.P.R. 124; *In re* Guadalupe Díaz, res. el 19 de septiembre de 2001, 2001 T.S.P.R. 128; *In re* Tejada Rivera, res. el 24 de septiembre de 2001, 2001 T.S.P.R. 136.

Aun cuando entendemos que la conducta incurrida por el licenciado García violentó normas éticas de gran envergadura e importancia, no debemos ignorar el hecho de que estamos ante un abogado que lleva 23 años en la práctica de la abogacía, constituyendo este procedimiento la primera falta a sus obligaciones profesionales y éticas. Tampoco podemos menospreciar el hecho de que el licenciado García ha aceptado su falta y ha mostrado su sincero arrepentimiento ante el incidente ocurrido.

En virtud de lo antes expuesto, procede que limitemos la sanción disciplinaria a <u>censurar enérgicamente</u> al licenciado García Muñoz por su actuación, apercibiéndolo de que en el futuro debe cumplir a cabalidad con los principios y postulados propios de nuestro ordenamiento jurídico, so pena de la imposición de sanciones disciplinarias <u>mucho más severas</u>. Estamos seguros de que el trámite de la querella y el tiempo transcurrido deben haber hecho meditar profundamente al querellado sobre el alcance de su actuación antiética y servirle esta experiencia para ser más cuidadoso en el descargo de su responsabilidad profesional futura.

Constituye norma reiterada que "las dudas sobre cuestiones de ética profesional debe resolverlas el abogado con rigurosidad contra sí mismo." *In re* Marrero García, res. el 18 de abril de 2001, 2001 T.S.P.R. 55; *In re* Valentín González, 115 D.P.R. 68, 73 (1984). <u>Esperamos que, en el futuro, ningún abogado olvide la misma</u>.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Elfrén García Muñoz

AB-2002-320

SENTENCIA

San Juan, Puerto Rico, a 5 de diciembre de 2003

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia censurando enérgicamente al Lcdo. Elfrén García Muñoz por su actuación, apercibiéndolo de que en el futuro debe cumplir a cabalidad con los principios y postulados propios de nuestro ordenamiento jurídico, so pena de la imposición de sanciones disciplinarias mucho más severas.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente Interino señor Rebollo López emitió Opinión concurrente. La Jueza Asociada señora Naveira de Rodón concurre con el resultado sin opinión escrita.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Elfrén García Muñoz

AB-2002-320

OPINIÓN CONCURRENTE EMITIDA POR EL JUEZ PRESIDENTE INTERINO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 5 de diciembre de 2003

Aun cuando concurrimos plenamente con el resultado al que llega la Mayoría en el presente caso, entendemos procedente hacer varios señalamientos en torno al proceso que utilizan nuestros tribunales en la designación de abogados de oficio. Ello por entender que la forma en que actualmente nuestros tribunales manejan el proceso establecido en el "Reglamento para la Designación de Abogados o Abogadas de Oficio en Procedimientos de Naturaleza Penal" podría estar imponiendo una carga muy onerosa a un sector de la clase togada de nuestro País. Nos explicamos.

I

Tal y como esboza la Mayoría, en <u>Ramos Acevedo</u> v. <u>Tribunal Superior</u>, 133 D.P.R. 599, 615-16 (1993), sostuvimos la validez constitucional de los estatutos que le imponen a la profesión legal el deber de ofrecer representación gratuita a personas indigentes. Sin embargo, en el referido caso también reconocimos que esta obligación <u>no</u> debe trascender el lindero de lo razonable y, mucho menos, debe ser impuesta de forma caprichosa y repetitiva. *Ibid*. En dicha ocasión nos preocupó el hecho de que este tipo de práctica pudiera <u>afectar irrazonablemente</u> a abogados dedicados a la práctica privada, en la medida en que se vieran imposibilitados de ganar el sustento de su familia. En tal virtud, y con el propósito de implantar un procedimiento uniforme a esos efectos, ordenamos la realización de un análisis en torno al "sistema" que debía imperar en nuestros tribunales a los fines de designar abogados de oficio en procedimientos de naturaleza penal.[17]

Como consecuencia de ello, en el año 1998 este Tribunal aprobó el "Reglamento para la Asignación de Abogados o Abogadas de Oficio en Procedimientos de Naturaleza Penal", 4 L.P.R.A. Ap. XXVIII. En el mismo se establecieron una serie de reglas

---

[17] Del mismo modo, le ordenamos a los Jueces Administradores de las diferentes regiones judiciales que, mientras se desarrollaba el referido procedimiento, elaboraran un plan mediante el cual se dividiera, de manera equitativa, razonable y justa, la carga que representa la asignación de oficio para los abogados; de manera que todos participaran en la referida asignación y que no se viera afectada en forma irrazonable la práctica individual privada de ninguno de ellos.

encaminadas a limitar los beneficios de representación legal gratuita exclusivamente a aquellas personas que, mediante declaración jurada, pudieran demostrar su estado de insolvencia y la imposibilidad de obtener recursos económicos para procurarse asistencia legal. Además, se detalló el procedimiento que debe observarse en la preparación de las listas de los abogados que habrán de ofrecer esta representación legal gratuita.

En lo que respecta a la selección y/o asignación de los abogados de oficio, la Regla 4 del referido Reglamento, 4 L.P.R.A. Ap. XXVIII R.4, preceptúa que la selección de éstos estará a cargo de la Delegación del Colegio de Abogados y del Juez Administrador o la Jueza Administradora de la Región Judicial correspondiente. Sobre este particular la Regla 5 especifica que la Delegación de cada región deberá someter al Juez Administrador una lista de los abogados calificados para ofrecer representación legal de oficio. 4 L.P.R.A. Ap. XXVIII R.5. El orden de asignación será determinado mediante sorteo público, a celebrarse no más tarde de quince (15) días después de la presentación de la referida lista.[18] 4 L.P.R.A. Ap. XXVIII R.6.

Por su parte, la Regla 8 del Reglamento bajo análisis, establece que esta asignación se hará en el orden estricto de la lista, salvo las excepciones preceptuadas en las propias Reglas, disponiéndose expresamente que ningún abogado podrá ser nombrado

---

[18] Según establece la Regla 7 del Reglamento para la Designación de Abogados de Oficio, 4 L.P.R.A. Ap. XXVIII R.7, esta lista debe permanecer bajo el control y la supervisión del Juez Administrador, a quien le corresponde distribuir copias actualizadas a todos los jueces que atiendan procedimientos de naturaleza penal.

fuera del orden establecido. Tampoco podrá ser designado ningún abogado que ya hubiese cumplido con el mínimo de cincuenta horas de servicio gratuito que establecen las reglas.[19] Según se dispuso, los jueces administradores deberán mantener un registro actualizado de las asignaciones de oficio y someterán ante la Directora Administrativa de los Tribunales un informe anual sobre las referidas designaciones. 4 L.P.R.A. Ap. XXVIII R.10 y 11.

En cuanto a la determinación de indigencia, en el referido Reglamento, específicamente en su Regla 13, se establece que la misma deberá ser realizada por el juez que presida el procedimiento judicial de que se trate. Es este juez quien tiene la obligación de determinar la elegibilidad del solicitante, ya sea por medio de la presunción que establece la Regla 15[20] o utilizando el formulario uniforme denominado "Declaración Jurada sobre Estado de Indigencia". En esta última instancia el juez

---

[19] Según lo dispuesto en la Regla 8, ante, siempre que se agote la lista para las asignaciones de oficio, deberá comenzarse nuevamente con el primer abogado en turno.

[20] La Regla 15 dispone lo siguiente:

La persona sometida a un procedimiento de naturaleza penal se presumirá indigente y, por lo tanto, elegible para recibir los servicios de un abogado de oficio si:

(a) Es participante de algún programa de beneficencia pública; o
(b) está desempleada; o
(c) está sumariada, o
(d) es menor de dieciocho (18) años de edad.

La presunción de indigencia quedará rebatida si, luego de un examen minucioso sobre los recursos económicos de la persona, el tribunal determinara que la persona tiene suficiente capacidad económica para pagar los servicios de un abogado o una abogada en la práctica privada. 4 L.P.R.A. Ap. XXVIII R.15.

tiene la responsabilidad de entregar a la persona indigente copia del referido formulario, el cual, luego de haber sido completado, deberá ser incluido en el expediente del procedimiento.[21] 4 L.P.R.A. Ap. XXVIII R.17.

La determinación inicial de indigencia será realizada a base de la información que surja de la faz de la declaración. Sin embargo, también podrá interrogarse a la persona indigente, o a la persona que solicite por él, sobre la información vertida en la declaración jurada y, de ser necesario, podrá solicitarse prueba documental o testimonial a los efectos de comprobar su veracidad. 4 L.P.R.A. Ap. XXVIII R.18.

II

Como vemos, al aprobarse el Reglamento para la Asignación de Abogados de Oficio se proveyeron soluciones a cada una de las situaciones advertidas por este Tribunal en el caso Ramos Acevedo v. Tribunal Superior, ante. Sin embargo, y muy a nuestro pesar, dichos procedimientos no están siendo implementados con la rigurosidad requerida.[22] Ello ha provocado que las designaciones de oficio continúen recayendo sobre un número limitado de abogados, quienes lamentablemente son los que llevan sobre sus hombros la gran responsabilidad de mantener en pie el sistema de representación legal gratuita.

---

[21] Según preceptúa la Regla 2, esto ocurrirá sólo en los casos en que la Sociedad para Asistencia Legal y la Corporación de Servicios Legales de Puerto Rico hayan renunciado a prestar sus servicios al solicitante por conflicto de interés.

La situación en que se encuentran estos abogados se agrava ante el hecho de que, a menudo, <u>los tribunales ignoran los procedimientos establecidos en el Reglamento</u>, a los efectos de corroborar el estado de indigencia de los solicitantes, provocando así que los abogados se vean en la obligación de representar gratuitamente a personas que no cumplen con los criterios de indigencia establecidos en el referido Reglamento. Ello podría desembocar en situaciones como la que se presenta en el caso de autos, donde el abogado designado alegó que su situación económica se vio severamente afectada a consecuencia del gran número de casos de oficio asignados por el tribunal. Ciertamente, esta situación nos parece <u>inaceptable</u>.

De entrada precisa que <u>enfaticemos</u> el hecho de que el Reglamento para la Asignación de Abogados de Oficio pone en manos de los jueces de instancia la <u>responsabilidad</u> de iniciar el procedimiento contemplado en el mismo.[23] Como señaláramos anteriormente, el referido Reglamento dispone que es el juez quien tiene el <u>deber</u> de entregarle a la persona que solicita la representación legal gratuita copia del formulario contenido en el Apéndice II de la Regla 35, una vez se <u>cerciore</u> de que el solicitante ha sido rechazado por la Sociedad para Asistencia Legal y la Corporación de Servicios Legales de Puerto Rico.

---

[22] Así surge de la información que le ha sido provista al Juez suscribiente en las visitas que ha realizado a las Regiones Judiciales del País.

[23] Según se expresa en el Informe emitido por el Comité Asesor sobre Asignación de Abogados de Oficio de 12 de abril de 1995, se entendió que es el funcionario judicial que preside el proceso

(Continúa . . .)

También es éste quien realiza la <u>determinación final</u> de indigencia y quien tiene la <u>responsabilidad</u> de asegurarse que el procedimiento ha sido debidamente completado <u>antes de</u> proceder a asignar un abogado de oficio.

<u>La primera falla que encontramos en el sistema de representación legal gratuita, actualmente en vigor, radica, precisamente, en que muchos de nuestros jueces no cumplen a cabalidad con las directrices contenidas en el Reglamento. Esto es, actualmente la mayoría de las designaciones se realizan sin requerirse la declaración jurada, sin la previa determinación de indigencia que exige el Reglamento y sin que se observe el orden de asignación que corresponde de acuerdo a las listas.</u> Aun cuando reconocemos que, en ciertas circunstancias particulares, un magistrado podría confrontar dificultades para cumplir a cabalidad con el procedimiento que establece el Reglamento para la Designación de Abogados de Oficio, definitivamente, <u>no</u> podemos permitir que ello se convierta en una norma generalizada en nuestros tribunales.

En la medida en que los jueces obvian el procedimiento establecido en el Reglamento para la Designación de Abogados de Oficio se pone en jaque todo el andamiaje que sostiene el sistema de representación legal gratuita en nuestra jurisdicción. La práctica de designar abogados de oficio <u>sin</u> una previa determinación de indigencia, penosamente, se ha convertido en el "modus operandi" en nuestros tribunales. Parece ser que un <u>mero</u>

---

quien está en mejor posición para hacer esta determinación, rápidamente, en la primera comparecencia del imputado.

reclamo de indigencia por parte del acusado es lo único que se requiere para que un magistrado acceda a concederle representación legal gratuita a un imputado. Ello, repetimos, sin una previa investigación en torno a su alegado estado de insolvencia.

¿Quién sufre las consecuencias de las fallas en la implementación de este proceso? Naturalmente, los abogados designados, quienes, en la mayoría de los casos, son los que advierten que su representado no es tan indigente como alega. Ello no obstante, y en virtud de la designación realizada por el tribunal, éstos se ven obligados a continuar representando gratuitamente a estas personas en la gran mayoría de las ocasiones. En el ejercicio de nuestro poder inherente para reglamentar la profesión de la abogacía, tenemos la responsabilidad de proveer una pronta solución a esta situación.

En primer lugar, resulta imperativo que nuestros jueces cumplan a cabalidad con todas las directrices contenidas en el Reglamento para la Designación de Abogados de Oficio. Con ello nos aseguramos que las personas que se benefician de este sistema realmente cumplen con los criterios de insolvencia requeridos en el referido Reglamento y que por su condición económica están verdaderamente imposibilitados de procurarse la asistencia de un abogado.

En segundo lugar --y atendiendo aquellos casos particulares en que, por circunstancias excepcionalísimas, los jueces se ven impedidos de observar las disposiciones contenidas en el Reglamento, procediendo entonces a nombrar abogados de oficio sin el análisis de insolvencia requerido-- somos del criterio que

debería existir un <u>procedimiento alterno</u> en que los abogados así designados puedan entrar en un proceso de negociación voluntario con el acusado, a manera de un método alterno de la evaluación de indigencia que exige el Reglamento, autorizándose a éstos para acordar con el imputado unos honorarios razonables en los casos en que el abogado entiende que solicitante no cumple con los criterios de insolvencia requeridos.[24] Una vez acordados, <u>de manera voluntaria</u>, unos honorarios el abogado deberá informar al tribunal –mediante moción que también deberá suscribir el acusado–del acuerdo voluntario al que ambos han llegado y que no se considere el caso como uno de oficio. <u>Esto, claro está, sin las connotaciones éticas negativas que en la actualidad revisten tales negociaciones.</u>

Por el contrario, si luego de realizar el análisis correspondiente el abogado entiende que el acusado <u>no cumple</u> con los criterios de insolvencia dispuestos en el Reglamento y no hay posibilidad de un acuerdo voluntario de representación profesional, éste deberá notificarlo       –mediante moción debidamente fundamentada a esos efectos–, solicitando, a su vez, del tribunal que lo releve de representar gratuitamente al

---

[24] Lo mismo debe aplicar en aquellos casos en que la determinación de elegibilidad se haya realizado a base de la presunción de indigencia establecida en la Regla 15, cuando posteriormente el abogado se percata de que el imputado cuenta con suficientes recursos económicos para sufragar los servicios de un abogado. Adviértase que no nos referimos a los casos en que el imputado ha mentido en su declaración jurada, pues en tales instancias opera lo establecido en la Regla 20 a los efectos de que "[p]robada la solvencia económica de la persona que recibió representación legal gratuita, ésta pagará al abogado o a la abogada de oficio sus

(Continúa . . .)

imputado. En caso de que el tribunal deniegue la referida solicitud de relevo de representación, el abogado debería de tener la oportunidad de acudir ante el Tribunal de Apelaciones en revisión de dicha determinación en un procedimiento similar al dispuesto en la Regla 32 del Reglamento de Asignación de Abogados, 4 L.P.R.A. Ap. XXVIII, R.32, para aquellos casos en que se revisan las determinaciones sobre asignación de abogados de oficio.

### III

Entendemos que las medidas antes propuestas constituyen salvaguardas efectivas y razonables, las cuales protegerían, no sólo el derecho constitucional de todo ciudadano indigente a recibir asistencia legal gratuita, sino también el de nuestra clase togada a obtener el sustento de su familia. En consecuencia, sería sumamente conveniente que enmendemos el "Reglamento para la Designación de Abogados o Abogadas de Oficio en

---

honorarios por los servicios prestados y por los gastos incurridos en su defensa." 4 L.P.R.A. Ap.XXVIII R.20.

Procedimientos de Naturaleza Penal" a los fines antes mencionados.


                              FRANCISCO REBOLLO LÓPEZ
                              Juez Presidente Interino