*In re* MICHAEL CORONA MUÑOZ, querellado.

*Número:* AB-96-97          *Resuelto:* 11 de octubre de 1996

*Hon. Cirilo Tirado Delgado*, querellante; *Guillermo Ramos Luiña*, abogado del querellado.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

"Lo menos que podemos hacer en servicio de algo es comprenderlo." José Ortega y Gasset.

Una licencia administrativa sin sueldo, que haya sido concedida por el Secretario de Justicia, sólo releva al Fiscal de descargar *temporalmente* sus deberes y responsabilidades. *Ésta no altera la investidura legal de su cargo y de su condición de Fiscal; tampoco le priva de sus prerrogativas.* No representa la libertad de desempeñarse como abogado (Oficial Investigador del Senado), pues existe una *absoluta incompatibilidad* —prohibición legal tajante— impuesta por la propia Asamblea Legislativa, en virtud de las características y de las limitaciones inherentes dimanantes del cargo.([1])

## I

Mediante la Resolución Núm. 2001 de 13 de marzo de 1996, el Senado de Puerto Rico creó una Comisión Especial para investigar posibles irregularidades en el manejo de una pesquisa senatorial anterior sobre los sucesos del Cerro Maravilla, que había sido realizada entre 1981 y 1992.

___

([1]) Este curso decisorio no examina, por resultar innecesaria, la existencia de los *alegados* conflictos de interés del Fiscal Michael Corona Muñoz, por supuestamente haber participado, antes de ser designado Oficial Investigador de una Comisión Especial del Senado de Puerto Rico, en investigaciones y casos relacionados con los sucesos mismos del Cerro Maravilla.

El 30 de agosto de 1996, el Senado, representado por su Presidente, Hon. Roberto Rexach Benítez, contrató al Fiscal Auxiliar Michael Corona Muñoz como Oficial Investigador de la Comisión Especial. En lo pertinente, el Fiscal Corona Muñoz se obligó a rendir al Senado sus *servicios profesionales* como investigador y someter la correspondiente prueba e información, producto de sus hallazgos. Aproximadamente tres (3) semanas después, el 25 de septiembre, el Secretario de Justicia, Hon. Pedro Pierluisi, le otorgó una *licencia sin sueldo, retroactiva* a la fecha de vigencia del contrato.

## II

De entrada, esta queja ética, presentada por el Senador Cirilo Tirado Delgado contra el Fiscal Corona Muñoz, es justiciable en este momento. Ésta versa sobre una actuación exclusiva del papel que ha asumido dicho Fiscal *contractualmente, como abogado*, al amparo del título de *Oficial* Investigador. El caso *Hernández Agosto v. Senado*, Civil Núm. KPE-96-0665 (904), pendiente ante el Tribunal de Primera Instancia, Sala Superior de San Juan, cuestiona si la actuación del Senado al así designarlo —siendo él un funcionario de la Rama Ejecutiva— es *constitucional*. Aunque parecidas, las controversias son distinguibles y los procesos independientes. Véanse: *In re Secretario de Justicia*, 118 D.P.R. 827 (1987); *In re Rodríguez Torres*, 106 D.P.R. 698 (1978).

Nuestra facultad constitucional para reglamentar las normas éticas en el ejercicio de la abogacía, en sus distintas manifestaciones —abogado en la práctica privada, Gobierno, Juez, Fiscal, etc.— *no se cuestiona. García O'Neill v. Cruz*, 126 D.P.R. 518, 522 (1990); *In re Carreras Rovira y Suárez Zayas*, 115 D.P.R. 778 (1984); *In re Rojas Lugo*, 114 D.P.R. 687 (1983); *In re Ríos*, 112 D.P.R. 353 (1982); *In re*

*Roldán González*, 113 D.P.R. 238 (1982); *In re Rodríguez Torres*, supra.([2])

## III

Es preciso restablecer los parámetros ético-disciplinarios de esta queja. Al evaluarla, no intervenimos indebidamente con el funcionamiento de la Rama Legislativa. No cuestionamos su poder constitucional de investigación. *Romero Barceló v. Hernández Agosto*, 115 D.P.R. 368 (1984); *Peña Clos v. Cartagena Ortiz*, 114 D.P.R. 576 (1983). Tampoco cuestionamos la facultad para establecer las reglas de su funcionamiento interno y de sus comisiones. Art. III, Sec. 9, Const. E.L.A., L.P.R.A., Tomo 1.

No pretendemos paralizar una investigación senatorial, sino asegurar, en bien de la verdad y la justicia, y en cumplimiento de nuestro deber de reglamentar la práctica de la abogacía en Puerto Rico, que cada uno de los funcionarios que allí participan y estén afectados y regulados por el Código de Ética Profesional de los Abogados, por serlo, cumplan con sus disposiciones.

Aclaramos y enfatizamos que nada de lo aquí dispuesto

([2]) En su queja alegó la existencia de un conflicto de intereses en el desempeño de la función como Fiscal y Oficial Investigador de la aludida Comisión Especial. El 21 de septiembre de 1996 concedimos diez (10) días al querellado Corona Muñoz para que la contestara. El 7 de octubre de 1996, el Senador Cirilo Tirado nos informó que el 2 de octubre de 1996 el Tribunal de Primera Instancia ante el cual está pendiente el Caso Núm. KPE-96-0665, que cuestiona la inconstitucionalidad del nombramiento, había paralizado los procedimientos hasta que nosotros resolviéramos esta querella. Pidió que le ordenáramos al Fiscal Corona Muñoz abstenerse de participar en los procedimientos ante la Comisión Especial como investigador hasta que resolviéramos.

El 8 de octubre de 1996 concedimos al Fiscal Corona Muñoz un término, que habría de vencer el 10 de octubre a las 12:00 del mediodía, para que mostrara causa por la cual no debíamos acceder. Dicha orden fue sin menoscabo de que el Fiscal Corona Muñoz adoptara, como medida cautelar, la abstención de continuar interviniendo en las investigaciones y referidas vistas senatoriales hasta tanto respondiera a la orden de mostrar causa, en virtud de que existía de su faz un aparente conflicto de interés. *De este modo le reconocimos el derecho a ser oído antes de resolver.*

Respondiendo a nuestra orden, el 10 de octubre compareció el Fiscal Corona Muñoz en extenso escrito, acompañando varios documentos, transcripciones y declaraciones juradas. *Resolvemos sin ulterior trámite.*

impide, con sujeción a la adopción de las medidas de rigor compatibles con nuestros pronunciamientos, que continúe la investigación senatorial de la pesquisa realizada por el Senado sobre los sucesos del Cerro Maravilla entre 1981 y 1992.

IV

Se impone un examen del contrato de servicios profesionales entre el Fiscal Corona Muñoz y el Senado. Lo primero que observamos es su título: "Contrato de *Servicios Profesionales*." Comparecen el Presidente del Senado, Hon. Roberto F. Rexach Benítez, y "[e]l *licenciado* Michael Corona Muñoz, mayor de edad, casado ... denominado El Investigador". A renglón seguido expone su "capacidad y experiencia necesaria para cumplir con las obligaciones y responsabilidades que asume mediante *este contrato*", pues "[e]l Senado necesita y desea obtener [sus] *servicios profesionales*". Luego de consignar que prestará sus "servicios profesionales" de investigación y otras tareas que le sean asignadas, la *segunda* cláusula indica que como "INVESTIGADOR prestará sus servicios de acuerdo con *las mejores prácticas de su profesión y no representará profesionalmente, directa o indirectamente, a ninguna persona natural o jurídica que tenga interés en asuntos bajo la consideración de la Asamblea Legislativa, aparte del interés general como ciudadano puede tener en los asuntos públicos*".

La *tercera* cláusula *condiciona* el contrato a que el Secretario de Justicia le conceda una licencia sin sueldo. La *cuarta*, consigna la confidencialidad de los asuntos. La *quinta*, expone que el Fiscal Corona Muñoz "*afirma que no presta ni prestará servicios profesionales bajo nombramiento o contrato en el sector público y/o privado* que constituyan o representen un conflicto de interés con los servicios *que prestará mediante este contrato*. El INVES-

TIGADOR podrá ser contratado para prestar tales servicios a jornada parcial, siempre que los mismos no constituyan un conflicto de interés con este contrato".

La *séptima*, establece como honorarios $71.42 la hora hasta $10,000 mensuales, por un fondo máximo de servicios profesionales de ciento cuarenta (140) horas al mes. La *novena* norma aclara que la relación contractual no lo convierte "en empleado del Senado",, aunque queda cubierto por la póliza de accidentes del trabajo. Finalmente, la *décima* establece su vigencia: 3 de septiembre al 31 de diciembre de 1996.

■   Evidentemente estamos ante un contrato *típico* de prestación de servicios profesionales de abogado. Así lo caracteriza el propio Fiscal Corona Muñoz al comparecer y suscribirlo como *"Licenciado", no como fiscal*. De su faz, *ello choca contra la prohibición establecida de que ningún Fiscal puede ejercer la abogacía fuera del ámbito de sus funciones como Fiscal*. No puede argüirse de que lo hizo como Fiscal, pues una *licencia sin sueldo* no autoriza a un fiscal a ser investigador de otra agencia o poder contratar con esto un aumento de sueldo más allá del establecido por ley.

Cualquier duda, en torno a que el contrato fue formalizado como abogado, queda disipada de la propia comparecencia del Fiscal Corona Muñoz. Al reclamar una vista ante este Tribunal, como parte del debido proceso de ley, antes de imponerle una sanción disciplinaria o prohibirle continuar como *Oficial Investigador*, nos dice que ello le privaría "de su interés propietario en el contrato de *servicios profesionales* suscrito con el Senado y de *su derecho de libertad a desempeñarse en su profesión de abogado"*. Comparecencia Especial, pág. 16.

## V

Al considerar los posibles intereses en pugna, o en conflicto, por razón de un funcionario público *ocupar dos (2) cargos simultáneamente*, es forzoso penetrar esa dimensión de las *incompatibilidades*. Ese término equivale al antagonismo, la oposición, la repugnancia que tiene una cosa para unirse con otra, o dos (2) o más personas entre sí. Se refiere, además, a la *imposibilidad legal* de una misma persona de ocupar simultáneamente dos (2) o más cargos, funciones o misiones. *In re Carreras Rovira y Suárez Zayas*, supra, pág. 788.

La doctrina reconoce que la incompatibilidad para ocupar dos (2) cargos públicos simultáneamente puede ser de *derecho o de hecho*. La primera, *la incompatibilidad legal*, presupone "la existencia de alguna norma legal que establezca la prohibición del ejercicio de la abogacía y, a la vez, otra actividad, función o cargo". R. Bielsa, *La Abogacía*, 3ra ed., Buenos Aires, Ed. Abeledo-Perrot, 1960, pág. 181. Por disposición expresa de ley, se prohíbe el desempeño simultáneo de dos (2) puestos. La segunda, cuando ambos puestos tienen incompatibilidades o conflictos más o menos permanentes en sus deberes, no meramente casuales. *Pueblo ex rel Arjona v. Landrón*, 57 D.P.R. 67, 70 (1940).

La situación fáctica y los documentos ante nos reflejan la existencia de una incompatibilidad legal absoluta. Estatutariamente, a los "fiscales se les prohíbe por la presente ejercer la abogacía". 3 L.P.R.A. sec. 97.

Ciertamente, con la firma del contrato de servicios profesionales con el Senado, el Fiscal Corona Muñoz pretendió soslayar esa prohibición legal y firmó como abogado. Como la ley expresamente le prohíbe al Fiscal Corona Muñoz ejercer la abogacía, existe claramente una *incompatibilidad de derecho*, por razón del cargo de Fiscal que ocupa, de ser, a la vez, abogado (Oficial Investigador del Senado).

■ Ese contrato constituye la mejor evidencia de que, al firmarlo, el licenciado Corona Muñoz actuó como abogado y no como fiscal. Según indicamos, el documento revela que, aún siendo fiscal, en su comparecencia y aceptación se identificó como *"licenciado* Michael Corona Muñoz". Además, establece que "prestará sus servicios de acuerdo con las mejores prácticas de su profesión". Este concepto sólo puede entenderse en cuanto a la profesión de abogado; en el *argot* jurídico, el Ministerio Público no constituye de por sí una profesión.

■ El nombramiento del Fiscal Corona Muñoz por el Gobernador, con el consejo y consentimiento del Senado, le llevó a jurar y a tomar posesión del cargo. Su fidelidad y comportamiento no sólo están afectados y regulados por la Constitución y por innumerables disposiciones legales, sino por el modelo ético que corresponde al ideal de buen abogado, expresado en el Preámbulo del Código de Ética Profesional. Le aplican, incuestionablemente, los principios deontológicos que regulan la profesión de abogado, con las modificaciones aceptables y cognoscibles resultantes de las peculiaridades inherentes que conlleva esa compleja gestión pública.

Como todo cargo civil, el de fiscal conlleva tres (3) elementos básicos: deberes, prerrogativas y una remuneración. Mientras ocupe el cargo, o es Fiscal del Departamento de Justicia o es Oficial Examinador del Senado.

■ Aduce el Fiscal Corona Muñoz que al habérsele concedido una licencia sin sueldo se subsana cualquier incompatibilidad. *No tiene razón.* El problema involucrado no es de doble sueldo, sino de incompatibilidad de cargos.

■ Dicha licencia, aunque le releva temporalmente de sus funciones, *no lo separa del cargo.* El beneficio de una licencia sin sueldo de un fiscal precisamente se origina en la tenencia y retención del mismo cargo; presupone que quien lo ocupa no ha renunciado. Sólo por abstracción y

ficción jurídica, puede negarse que un fiscal con una licencia sin sueldo no ocupa la posición. Como la plaza de Fiscal Auxiliar es creada por ley, ni siquiera puede el Secretario de Justicia o el Primer Ejecutivo llenarla de forma provisional; *no hay desvinculación total ni existe vacante alguna.*

No puede argüirse con seriedad que la concesión de una licencia sin sueldo subsane una incompatibilidad de dos (2) cargos en cuanto a sus deberes y prerrogativas cuando, por definición, el fiscal continúa ocupando el cargo original; máxime cuando las dos (2) posiciones son incompatibles entre si y excluyentes.

Recapitulamos. No podemos avalar la dicotomía que pretende hacer. el Fiscal Corona Muñoz a través de un contrato de servicios como abogado, como Oficial Investigador y asesor del Senado. No puede fragmentarse ni diversificarse el cargo de Fiscal. Aun con una licencia sin sueldo, no cesa de ser Fiscal. Según nuestro ordenamiento constitucional, estatutario y ético, no es posible el binomio que nos propone el Fiscal Corona Muñoz de *Fiscal-Abogado Investigador Legislativo.* O se ejerce el cargo de fiscal, o se ejerce la abogacía.

*Se dictará la sentencia correspondiente.*

El Juez Asociado Señor Rebollo López emitió una opinión disidente. La Juez Asociada Señora Naveira de Rodón se inhibió.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

La opinión que hoy emite el Tribunal afecta, no hay duda, derechos propietarios del Lcdo. Michael Corona Muñoz. La validez de la actuación del Tribunal puede ser cuestionada desde dos (2) puntos de vista distintos; esto es,

la corrección en sí de la determinación final a la que se llega y respecto a la oportunidad que se le dio al licenciado Corona Muñoz de poder presentar, de manera adecuada, sus defensas al respecto.

No expresamos criterio alguno respecto a la primera cuestión; ello resulta innecesario dado el hecho de que entendemos que el Tribunal no le ha brindado al licenciado Corona Muñoz una oportunidad razonable para exponer su posición sobre el asunto en controversia.

Como es sabido, el Senador Cirilo Tirado Delgado juramentó una queja contra el licenciado Corona Muñoz el 25 de septiembre de 1996. En la misma le imputó a éste, en síntesis y en lo pertinente, un "impermisible conflicto de intereses" al haber aceptado, siendo fiscal del Departamento de Justicia de Puerto Rico, servir como "oficial investigador" de la Comisión Especial del Senado de Puerto Rico que está investigando posibles irregularidades en la pesquisa anterior que dicho cuerpo legislativo llevó a cabo sobre los sucesos del Cerro Maravilla.

Una Sala Especial de Verano de este Tribunal, mediante Resolución de 27 de septiembre de 1996, y a "los fines de evaluar la queja presentada", le concedió término al licenciado Corona Muñoz "para contestar la misma".

Así las cosas, el Senador Tirado Delgado radicó ante este Foro una moción en solicitud de remedios urgentes en la que, en síntesis, reclamaba acción inmediata de este Tribunal en evitación de que el licenciado Corona Muñoz continuara desempeñando el cargo de oficial investigador del Senado.

Mediante Resolución de 8 de octubre de 1996, pág. 1, el Tribunal le concedió término al licenciado Corona Muñoz para que "mostrara causa por la cual no debamos a acceder a la petición del promovente y ordenar que no intervenga en los procedimientos de la Comisión Especial del Senado, *hasta tanto se adjudique la queja presentada en su contra*". (Énfasis suplido.)

A renglón seguido, el Tribunal "explicó" la razón o fundamento para lo antes expresado. Se dijo, en el segundo párrafo de dicha resolución, que:

Esta orden de mostrar causa es sin menoscabo de que el Fiscal Michael Corona adopte como medida cautelar, abstenerse de continuar interviniendo en las investigaciones y referidas vistas senatoriales hasta tanto responda a la orden de mostrar causa, *en virtud de que existe, de su faz, un aparente conflicto de interés.* (Énfasis suplido.)

El licenciado Corona Muñoz compareció, dentro del término brindádole, radicando una extensa y fundamentada comparecencia. *En la misma rebatió, con gran eficacia, el señalamiento sobre la existencia de un conflicto de intereses.* Tan es así que, en el día de hoy, el Tribunal le ordena "cesar de inmediato de prestar sus servicios profesionales" al Senado de Puerto Rico *"por razón de que existe una incompatibilidad legal".* Esto es, *el Tribunal abandonó su teoría de que existía un conflicto de intereses.*

Nos preguntamos: ¿se le ha brindado al licenciado Corona Muñoz la oportunidad de refutar la teoría de la "incompatibilidad legal"? *Creemos que no.* Nos preocupa sobremanera el hecho de que, de brindársele esta oportunidad al licenciado Corona Muñoz, éste nos pueda convencer de que tampoco existe esa incompatibilidad legal, al igual que nos convenció de que no existe un conflicto de intereses.

Es por ello que disentimos.