RESOLUCIÓN
El 15 de agosto de 2008 el Sr. Juan M. Sánchez Silva presentó una queja ante este Tribunal contra el Ledo. José Molina Oliveras, en la que le imputó que hizo una falsa representación como Fiscal cuando en realidad se desempeñaba como empleado de la Autoridad de Acueductos y Alcantarillados (AAA). A continuación esbozamos los antecedentes fácticos e incidentes procesales ante nuestra consideración.
I
El Ledo. José M. Molina Oliveras (licenciado Molina Oliveras o querellado) fue admitido al ejercicio de la abogacía el 6 de julio de 1994 y prestó juramento como notario el 16 de mayo de 1999. No obstante, el 10 de septiembre de 2003 renunció a su función como notario. El querellado fue nombrado Fiscal Auxiliar II desde el 2002 hasta su renuncia en el 2010. Al licenciado Molina Oliveras se le concedió una licencia sin sueldo en el 2004 a solicitud del presidente de la AAA, específicamente para atender la situación de amenaza de huelga que enfrentaba dicha agencia.(1) Precisamente, es a partir de ese evento huelgario que surge la queja instada en su contra.
*549 El Sr. Juan Sánchez Silva (señor Sánchez Silva o quejoso), quien era empleado de la AAA y miembro de la Unión Independiente Auténtica de Empleados de la Autoridad de Acueductos y Alcantarillados (UIA), estuvo implicado en un incidente el 3 de diciembre de 2004 durante una huelga contra la AAA. Al quejoso se le imputó agredir a otro empleado unionado que intentaba cruzar la línea de huelga en unas instalaciones de esa corporación pública en Aguada, Puerto Rico. A raíz de este suceso, el agente Gustavo Pellot Ruiz (agente Pellot Ruiz) se presentó al lugar de los hechos para investigar lo ocurrido.(2)
Subsiguientemente, el 6 de diciembre de 2004 se presentaron las denuncias por los delitos de agresión y alteración a la paz contra el señor Sánchez Silva. Escuchada la prueba, el foro primario determinó no causa en ambos cargos. Es pertinente mencionar que, a la Vista de Regla 6 comparecieron el señor Sánchez Silva, el abogado de la defensa, la alegada víctima de agresión, el agente Pellot Ruiz, un representante de la UIA y el licenciado Molina Oliveras, quien se identificó como Fiscal Auxiliar del Departamento de Justicia.(3)
Luego de varios incidentes procesales, el señor Sánchez Silva presentó una queja ante este Tribunal contra el licenciado Molina Oliveras. Específicamente, argüyó que el querellado ejerció funciones como Fiscal durante la etapa investigativa y en la vista de causa probable para arresto, todo ello mientras fungía como Director de Seguridad Corporativa de la AAA.(4) Por esa razón sostiene que el querellado indujo a engaño a todas las partes en el proceso judicial y que su conducta constituyó una “falsa e ilegal representación” como funcionario del Ministerio Público.(5)
*550 Por su parte, en la contestación a la queja el licenciado Molina Oliveras sostuvo que al momento de los hechos disfrutaba de una licencia sin sueldo de su cargo como Fiscal en el Departamento de Justicia y que laboraba en la AAA como Director de Seguridad Corporativa, Flota y Emergencias.(6) Igualmente, alegó que su comparecencia a la vista de causa probable fue en representación de la AAA.(7)
Atendidos los escritos de las partes, el 28 de enero de 2009 remitimos la queja a la Oficina del Procurador General y le ordenamos que realizara una investigación y que preparara un informed.(8) Entre los hallazgos de la investigación efectuada por el Procurador General surge que, luego del incidente en la huelga, el licenciado Molina Oliveras se identificó como Fiscal ante el agente Pellot Ruiz en una comunicación telefónica que estos sostuvieron. Asimismo, instruyó al agente a presentar las denuncias por cargos criminales contra el quejoso. A esos efectos, el informe del incidente confeccionado por el agente el 4 de diciembre de 2004 menciona que el caso se citó “por instrucciones del Fiscal José Molina”.(9)
El informe del Procurador General revela también que el día de la vista de causa probable para arresto, el quejoso y el agente Pellot Ruiz desconocían que el licenciado Mo *551 lina Oliveras trabajaba para la AAA.(10) Ambos coinciden en que el querellado asistió al proceso judicial en funciones como Fiscal puesto que, según estos, realizó interrogatorios y participó en la argumentación final durante la vista.(11) Así también, el juez que presidió el proceso hizo constar la presencia del licenciado Molina Oliveras como representante del Ministerio Público en los pliegos de ambas denuncias.(12)
Según la prueba presentada, el Procurador General coligió que el licenciado Molina Oliveras realizó una falsa representación al agente Pellot Ruiz, al tribunal y a los comparecientes en el proceso judicial al dar la impresión de estar autorizado a ejercer sus funciones como Fiscal.(13) De igual forma, señaló que al beneficiarse de una licencia sin sueldo, el querellado no era un Fiscal en funciones, sino un empleado de la AAA con responsabilidades muy diferentes. En consecuencia, concluyó que la lealtad del querellado como funcionario de la AAA era con esa dependencia y no con el Ministerio Público, el cual en ese momento no lo supervisaba.(14)
En atención a lo acaecido, el Procurador General puntualizó que existe un asunto de credibilidad sobre los detalles de la conversación entre el agente Pellot Ruiz y el querellado previo a la denuncia, así como sobre lo acontecido en la vista y sobre las funciones llevadas a cabo por el licenciado. No obstante, asevera que existe prueba clara, robusta y convincente para iniciar un procedimiento disciplinario contra el licenciado Molina Oliveras por infracción a los Cánones 35 y 38 del Código de Etica Profesional. Esto, pues el querellado realizó una falsa representación a *552 los tribunales sobre que estaba autorizado y podía ejercer sus funciones como Fiscal en el referido caso.(15)
Examinados los antecedentes fácticos de la queja que nos ocupa, pasemos a exponer las normas que rigen el marco ético profesional.
II
A. Como es sabido, “este Tribunal tiene el poder inherente para reglamentar la admisión a la profesión de abogado, así como para tomar acción disciplinaria contra [aquellos] miembro [s] de la profesión que viol [en] las leyes y los cánones del Código de Ética Profesional”, 4 LPRA Ap. IX. In re Fontánez Fontánez, 181 DPR 407, 416 (2011). Véanse: In re Rodríguez Vázquez, 176 DPR 168 (2009); In re Deynes Soto, 164 DPR 327 (2005).
En el ejercicio de esa facultad reglamentadora, en reiteradas ocasiones hemos resaltado “que los Cánones de Ética Profesional establecen las normas mínimas de conducta que rigen a los miembros de la profesión legal en el desempeño de su delicada e importante labor”. In re Cotto Luna, 187 DPR 584 (2013). Véase In re Peña, Santiago, 185 DPR 764 (2012). Estas directrices disciplinarias tienen la finalidad de “promover un desempeño profesional y personal acorde con los más altos principios de conducta decorosa, ello para beneficio tanto de la profesión como de la ciudadanía y las instituciones de justicia del país”. In re Gervitz Carbonell, 162 DPR 665, 686 (2004). Véase In re Ortiz Brunet, 152 DPR 542 (2000). Por tal razón, “[e]l desempeño de la abogacía requiere en todo momento celo, cuidado y prudencia. La consecución de estos logros no admiten duda ni ambigüedad en la gestión profesional”. In re Carreras Rovira y Suárez Zayas, 115 DPR 778, 784 (1984).
En torno a ese extremo, debemos puntualizar que en su Preámbulo, el Código de Ética Profesional dispone el deber de todo abogado “de desempeñar su alto ministerio con la *553 mayor y más excelsa competencia, responsabilidad e integridad”. Preámbulo del Código de Ética Profesional, 4 LPRA Ap. IX, C. 1 n. “Este mandato de moral profesional aplica siempre a todo ‘juez, fiscal, abogado postulante, asesor o en cualquier otro carácter’ ”. (Énfasis en el original). In re Colton Fontán, 128 DPR 1, 6 (1991).
Cónsono con lo enunciado, el Canon 35 dispone que “[l]a conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada”. Canon 35 del Código de Ética Profesional, supra. La importancia de este precepto yace en que “la verdad y la justicia están necesariamente juntas: por lo que sería intrínsecamente contradictorio administrar la justicia o reclamar su actuación, sin respetar la verdad”. (Énfasis suprimido). In re Colton Fontán, supra, pág. 112, citando a G. Del Vecchio, La obligación jurídica de la verdad, 11 Rev. Fac. Der. y C. Soc. Montevideo 13, 25 (1960). Consiguientemente, esta norma “dispone que no es sincero ni honrado utilizar medios que sean inconsecuentes con la verdad y que no se debe inducir al juzgador a error mediante la utilización de artificios o de una falsa relación de hechos o del Derecho”. In re Nieves Nieves, 181 DPR 25, 41 (2011). Consecuentemente, “el abogado que provee al tribunal información falsa o que no se ajuste a la verdad, o que oculte información que deba ser revelada, incumple con este canon”. Id.
Por ello, hemos advertido que “la conducta de un abogado debe ser sincera y honrada frente a todos y ante todo tipo de acto”. In re Ojeda Martínez, 185 DPR 1068, 1074—1075 (2012). Véase In re Pons Fontana, 182 DPR 300 (2011). Se incumple con este deber por el simple hecho de faltar a la verdad. El escenario de cumplimiento de esta norma implica el comportamiento del abogado “frente a to-dos: clientes, compañeros abogados y tribunales”. In re Nieves Nieves, supra, pág. 42. Ello, pues es sobre los abogados en quienes “recae principalmente la misión de administrar la justicia” y, por consiguiente, estos tienen el deber de “con *554 ducirse siempre con integridad ante los foros judiciales”. íd. En estos casos, no es defensa el hecho que “no se obr[e] de mala fe, deliberadamente o sin la intención de engañar”, así como tampoco es excusa el que no se haya causado daño a tercero. Id., pág. 43. Lo esencial “para que se configure una infracción al Canon 35 es que se falte a los valores de honradez y veracidad, pilares de la profesión legal”. Id.
Por su parte, el Canon 38 del Código de Etica Profesional, supra, en lo pertinente, prescribe lo siguiente:
Canon 38. Preservación del honor y dignidad de la profesión El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. En su conducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia [...]
Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable. En observancia de tal conducta, el abogado debe abstenerse en absoluto de aconsejar y asesorar a sus clientes en otra forma que no sea el fiel cumplimiento de la ley y el respeto al poder judicial y a los organismos administrativos. (Enfasis suplido).
Vemos, pues, que este precepto ético establece la responsabilidad del letrado de exaltar el honor y la dignidad de la profesión mediante una conducta ejemplar. Asimismo, precisa mencionar que el deber de evitar la apariencia de conducta profesional impropia deriva del hecho de que cada letrado es un “espejo en el cual se refleja la imagen de la profesión, por lo que debe actuar, tanto en su vida profesional como en su vida privada, con limpieza, lealtad y el más escrupuloso sentido de responsabilidad”. In re Peña, Santiago, supra, pág. 781.
Esta obligación ética fomenta “la confianza del público en la imparcialidad de nuestro sistema judicial [...]”. García O’ Neill v. Cruz, 126 DPR 518, 527 (1990). Con ese propósito, se impone al abogado “el deber de lucir puro y *555 libre de influencias extrañas a su gestión profesional y de eliminar la apariencia de que puede influenciar indebidamente en tal gestión”. Id.
Así, al interpretar el Canon 38 hemos dispuesto que “[b]asta con que en el ejercicio de la función de abogado su actuación sea incompatible con la situación y circunstancias del caso para que resulte obvio que la representación legal es impropia, por afectar la independencia profesional del abogado frente a otro interés público o privado”. García O’Neill v. Cruz, supra, pág. 525. Observamos, por consiguiente, que la incompatibilidad de funciones surge cuando un letrado se encuentra ejerciendo dos funciones antagónicas, opuestas o con intereses encontrados. Tal conducta incide ineludiblemente sobre el deber del abogado de aportar hacia la consecución de una mejor administración de la justicia y de evitar la apariencia de conducta impropia. Canon 38, supra. Así, en In re Carreras Rovira y Suárez Zayas, supra, pág. 788, señalamos:
En materia deontológica se acepta que uno de los requisitos para el ejercicio de la abogacía es la compatibilidad de la actuación con la situación y circunstancias. La premisa es sencilla: quien no sea independiente no está en condiciones de ejercer la profesión.
En cuanto a cómo se manifiesta la incompatibilidad de funciones, la doctrina reconoce que puede ser por razones de derecho o de hecho. In re Corona Muñoz I, 141 DPR 640, 647 (1996). La incompatibilidad de derecho “presupone ‘la existencia de alguna norma legal que establezca la prohibición del ejercicio de la abogacía y, a la vez, otra actividad, función o cargo’ ”. íd., pág. 647, citando a R. Bielsa, La abogacía, 3ra ed., Buenos Aires, Ed. Abeledo-Perrot, 1960, pág. 181. Mientras, la incompatibilidad de hecho se refiere a “cuando ambos puestos tienen incompatibilidades o conflictos más o menos permanentes en sus deberes, no meramente casuales”. In re Corona Muñoz I, supra, pág. 647.
Considerando los principios que rigen la conducta ética, pasemos al análisis sobre los deberes y las funciones de un abogado que desempeña el cargo de Fiscal.
*556 B. La Ley Orgánica del Departamento de Justicia, Ley 205-2004 (3 LPRA sec. 291 et seq.) (Ley Núm. 205) establece los deberes y las funciones del Fiscal. Entre estos, figura la responsabilidad “de instar las causas criminales, civiles y especiales comprendidas dentro del marco de sus respectivas obligaciones [...]”. 3 LPRA sec. 294x. Además, esta legislación le impone al Fiscal la obligación de observar las normas éticas en el ejercicio de su vida profesional y el deber de “[d]esempeñar su ministerio con integridad y capacidad y emitir un juicio informado en todas las situaciones manteniendo siempre un compromiso con la verdad y la justicia”. (Énfasis suplido). 3 LPRA sec. 294x(d).
Estos parámetros morales son fundamentales y permean la función de los integrantes del Ministerio Público. Ello, pues los Fiscales, como miembros de la profesión jurídica, no están relevados ni excusados de exhibir los estándares éticos que promueven la confianza en nuestro sistema de justicia. Más bien, dada la importancia de sus funciones, hemos sometido a los Fiscales “a estándares éticos más estrictos que los que obligan a la profesión en general, pues no sólo [están] obligado [s] a cumplir con los cánones que rigen la profesión de la abogacía, sino también a demostrar imparcialidad en su función inquisitiva”. (Énfasis suplido). In re Marrero García, 153 DPR 879, 893 (2001).
Esta obligación y responsabilidad más abarcadora guarda estrecha relación con el valor fundamental de asegurar la confianza en las instituciones públicas. Bien lo expresó este Tribunal por voz del ex Juez Asociado Negrón García, cuando afirmó que “la fortaleza o debilidad de las instituciones gubernamentales en una democracia guarda estricta correspondencia con la integridad o flaqueza de cada uno de sus funcionarios”. In re Colton Fontán, supra, pág. 6. En ese contexto, debemos ser firmes y vigilantes del delicado ligamen que tiene la función del Fiscal en la consecución de un orden legal justo, imparcial y democrático.
Considerando los hechos de la queja ante nos, es imperativo recordar y subrayar que
*557 [e]l descargo de la función social de los miembros de la profesión jurídica está atado inexorablemente al sistema democrático puertorriqueño, fundamental para la vida de la comunidad y donde la fe de la justicia se considera factor determinante en la convivencia social, [por lo cual] es de primordial importancia instituir y mantener un orden jurídico íntegro y eficaz, que goce de la completa confianza y apoyo de la ciudadanía”. Preámbulo del Código de Ética Profesional, [supra]. In re Colton Fontán, supra, pág. 6.
Para ello, todo abogado tiene el deber de desempeñar su alto ministerio con la mayor y más excelsa competencia, responsabilidad e integridad. Preámbulo, supra. Véase In re Colton Fontán, supra, pág. 6. En consecuencia, el fiscal, “como miembro de la clase togada [está] comprometido al esclarecimiento de la verdad y a procurar que se haga justicia [...]”. In re Pacheco Nieves, 104 DPR 566, 567 (1976), voto concurrente y disidente. Véase In re Colton Fontán, supra.
Acorde con lo intimado, hemos reconocido que la misión del Fiscal es “difícil y compleja”, ya que está vinculada “ ‘al problema de las libertades fundamentales de la persona frente al Estado’ ”. In re Colton Foltán, supra, pág. 7, citando a C.A. Ayarragaray, El Ministerio Público y la libertad, XXXII (Núm. 3) Rev. C. Abo. Buenos Aires 208 (1954). Precisamente, por las peculiaridades del cargo de Fiscal, la Corte Suprema de Estados Unidos ha enfatizado la importancia de administrar el Ministerio Público con “valentía e independencia”. Imbler v. Pachtman, 424 US 409, 423-424 (1976).
Guiados por estos principios vitales e imprescindibles para la protección de los valores de libertad y justicia en un sistema republicano de gobierno, nos hemos expresado sobre el cuidado ético que debe ejercer un Fiscal cuando ocupa otro puesto en el servicio público. A esos efectos, en In re Corona Muñoz I, supra, pág. 642, concluimos que un Fiscal que disfruta de una licencia sin sueldo concedida por el Secretario de Justicia estaba impedido legalmente de suscribir un contrato de servicios profesionales para ejer *558 cer como Oficial Investigador del Senado. Así, expresamos lo siguiente:
Una licencia administrativa sin sueldo, que haya sido concedida por el Secretario de Justicia, sólo releva al Fiscal de descargar temporalmente sus deberes y responsabilidades. Esta no altera la investidura legal de su cargo y de su condición de Fiscal; tampoco le priva de sus prerrogativas. No representa la libertad de desempeñarse como abogado (Oficial Investigador del Senado), pues existe una absoluta incompatibilidad —prohibición legal tajante— impuesta por la propia Asamblea Legislativa, en virtud de las características y de las limitaciones inherentes dimanantes del cargo. (Énfasis en el original). Id., pág. 642.
Específicamente, al evaluar los hechos del caso según la ley vigente al momento, identificamos:
Evidentemente estamos ante un contrato típico de prestación de servicios profesionales de abogado. Así lo caracteriza el propio Fiscal Corona Muñoz al comparecer y suscribirlo como “Licenciado”, no como fiscal. De su faz, ello choca contra la prohibición establecida de que ningún Fiscal puede ejercer la abogacía fuera del ámbito de sus funciones como Fiscal. No puede argüirse de que lo hizo como Fiscal, pues una licencia sin sueldo no autoriza a un fiscal a ser investigador de otra agencia o poder contratar con esto un aumento de sueldo más allá del establecido por ley. (Énfasis en el original). In re Corona Muñoz I, supra, pág. 646.
De esa forma, afirmamos en aquella ocasión que una licencia sin sueldo releva al Fiscal temporeramente de sus deberes y responsabilidades, mas no lo separa del cargo, íd., pág. 648.
Cabe destacar que para ese entonces estaba vigente la Ley Núm. 9 de 9 de marzo de 1905 (1904-1905 Leyes de Puerto Rico 191) (Ley Núm. 9), que prohibía a los Fiscales “ejercer la Abogacía” de manera general. Por tal fundamento, en In re Corona Muñoz I, supra, concluimos que ocupar simultáneamente el puesto de Fiscal y el de Investigador del Senado violaba “la prohibición establecida de que ningún Fiscal puede ejercer la abogacía fuera del ámbito de sus funciones como Fiscal”. (Enfasis suprimido). *559 íd., pág. 646. En consecuencia, determinamos que existía una incompatibilidad de derecho entre ambos puestos.(16)
Sin embargo, esta ocasión nos brinda la oportunidad de interpretar por primera vez los cambios acontecidos en las limitaciones impuestas al Fiscal en cuanto al ejercicio de la abogacía. Esto, pues en el 2004 la precitada Ley Núm. 205 derogó la prohibición establecida en la Ley Núm. 9 y estableció la restricción vigente por la cual los Fiscales y Procuradores están vedados del “ejercicio privado de la abogacía y la notaría mientras ocupen sus respectivos cargos”. 3 LPRA sec. 294v. Como se puede observar, a diferencia de la derogada Ley Núm. 9, que prohibía el ejercicio de la abogacía en todos los ámbitos, la legislación vigente solo prohíbe el ejercicio de la profesión en el sector privado. En consecuencia, un Fiscal puede ocupar otro puesto en el sector público si cuenta con la debida autorización para hacerlo. No obstante, ello no lo releva de sus responsabilidades éticas antes descritas.
A la luz de este marco doctrinario, procede atender los méritos de la queja que tenemos ante nuestra consideración.
h-H HH HH
De los hechos expuestos surge claramente que el licenciado Molina Oliveras ocupaba dos cargos al momento de celebrarse la vista de causa probable contra el señor Sánchez Silva por el incidente ocurrido en las instalaciones de la AAA. Esto es, el querellado ocupaba la posición de Fiscal Auxiliar II en el Departamento de Justicia, donde disfrutaba de mía licencia sin sueldo, y a su vez laboraba como Director de Seguridad Corporativa de la AAA. Asimismo, surge del legajo que el querellado fue notificado del incidente y que, al recibir la comunicación de parte del agente *560 Pellot Ruiz, se identificó como Fiscal y le instruyó a someter las denuncias contra el quejoso.(17) Además, el licenciado Molina Oliveras compareció al proceso judicial en contra del señor Sánchez Silva actuando como funcionario del Ministerio Público. Ello al punto de que el propio juzgador que presidió la Vista de Regla 6 lo identificó como Fiscal.(18)
En cada instancia, a saber, desde su intervención con el agente Pellot Ruiz en la investigación de los hechos hasta su participación en la Vista de Regla 6 contra el quejoso, el licenciado Molina Oliveras ejerció su posición de representante del Ministerio Público. El querellado se identificó como Fiscal y ejerció funciones durante el procesamiento criminal al interrogar a los testigos y argumentar el caso ante un juez. Ello, mientras ocupaba el puesto de Director de Seguridad de la AAA y disfrutaba de una licencia sin sueldo por el cargo de Fiscal.
De esta forma, frente al agente Pellot Ruiz, al quejoso y al magistrado, el licenciado Molina Oliveras actuó deshonrosamente, induciéndolos a creer que era un representante imparcial del Pueblo. Ello así, cuando en realidad estaba desempeñándose como empleado de la AAA, entidad que claramente tenía interés en el procesamiento criminal del quejoso. En ese contexto, es evidente la incompatibilidad de funciones. No existe duda alguna que el desempeño de ambos puestos desplegaba funciones antagónicas, opuestas y con intereses encontrados. Es ineludible concluir que el querellado no podía descargar objetivamente su función de Fiscal, pues disfrutaba de una licencia sin sueldo y su lealtad estaba con la AAA. La licencia sin sueldo que le fue conferida jamás constituyó una autorización para utilizar las prerrogativas del cargo de Fiscal en aras de adelantar los intereses de la agencia para la cual trabajaba.
Estas acciones laceran la conducta que debe observar *561 un Fiscal que disfruta de una licencia sin sueldo y que labora en otro cargo en el servicio público. Al ocupar el puesto de Director de la Oficina de Seguridad y Emergencia con la AAA, el licenciado Molina Oliveras ejercía funciones patentemente diferenciables de las de un Fiscal. Esas responsabilidades le imponían un deber de lealtad para con la corporación. Consecuentemente, este no poseía la independencia de criterio ni la imparcialidad necesaria para ejercer cabal y éticamente su cargo como representante del Ministerio Público.
Como expusimos, el letrado asistió al tribunal mediante una falsa representación, cuando en realidad representaba a la AAA y sus intereses eran claramente incompatibles con la imparcialidad que se le requiere al Ministerio Público. Esas acciones condujeron a que todas las partes identificaran erróneamente al querellado como un Fiscal autorizado a ejercer en el proceso judicial, ello en contravención de lo establecido en el Canon 35, supra. La conducta de inducir a un foro judicial a tal error constituye una falta de sinceridad y honradez altamente reprochable a la luz de los estándares éticos que rigen la práctica de nuestra profesión y aseguran la confiabilidad del sistema de justicia.
Hemos observado que la Ley Núm. 205, supra, no prohíbe que un Fiscal, mientras disfruta de una licencia sin sueldo, ejerza la abogacía en el sector público. Ahora bien, en virtud de esa concesión, este debió abstenerse de ejercer funciones delegadas al Ministerio Fiscal. Más aún cuando los intereses de ambos puestos eran claramente incompatibles. Recordemos que el cargo de Fiscal requiere, sobre todo, imparcialidad en su función investigativa e inquisitiva, mientras que el Director de Seguridad Corporativa de la AAA tiene la obligación de velar y defender los intereses de esa dependencia pública. No hay duda de que la conducta del licenciado Molina Oliveras menoscabó su deber de integridad, capacidad e independencia, criterios necesarios para desempeñarse honrosamente en el cargo de Fiscal. Por consiguiente, colegimos que las acciones del *562 querellado, más allá de propiciar la apariencia de conducta impropia e infringir el Canon 38, supra, amancillaron la dignidad de la profesión, así como la fe en y seguridad de nuestras instituciones.
El despliegue de esta conducta es reprensible, pues no solo violenta los estándares éticos de la abogacía, sino que debilita “la confianza del público en la imparcialidad de nuestro sistema judicial [...]”. García O’Neill v. Cruz, supra, pág. 527. Este postulado cobra mayor importancia en el caso de un Fiscal, que se rige por estándares éticos más estrictos y está llamado “al esclarecimiento de la verdad y a procurar que se haga justicia [...]”. In re Pacheco Nieves, supra, pág. 567. Como hemos reiterado, resulta contradictorio que se administre la justicia mientras se demuestra un claro menosprecio a la verdad, ya que ambos principios son esenciales para proteger las libertades y los derechos que garantizan nuestro sistema republicano de gobierno. In re Colton Fontán, supra, pág. 112.
Constatadas las faltas éticas imputables al licenciado Molina Oliveras, solo resta determinar la sanción disciplinaria que procede imponer. Para guiar nuestra discreción al momento de imponer sanciones por infracciones éticas, hemos delimitado los criterios siguientes:
(i) la buena reputación del abogado en la comunidad; (ii) su historial previo; (iii) si esta constituye su primera falta y si ninguna parte ha resultado perjudicada; (iv) la aceptación de la falta y su sincero arrepentimiento; (v) si se trata de una conducta aislada; (vi) el ánimo de lucro que medió en su actuación; (vii) el resarcimiento al cliente, y (vii) cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien según los hechos. In re Cotto Luna, supra, pág. 11.
Ahora bien, aunque el letrado ha desplegado una conducta reprochable según los estándares del Código de Ética Profesional, debemos señalar que está admitido al ejercicio de la abogacía desde hace aproximadamente diecinueve años y que presentó su renuncia al cargo de Fiscal en el 2010. Como atenuante, surge el hecho que el querellado ha gozado de buena reputación en el periodo de tiempo du *563 rante el cual ha pertenecido a la profesión de la abogacía. Esta, además, es la primera falta ética del licenciado Molina Oliveras en su récord profesional.
Concluimos, pues, que el letrado infringió los Cánones 35 y 38 del Código de Etica Profesional, supra. En atención a ello, reafirmamos que actuaciones de esta naturaleza no serán toleradas por este Tribunal, ya que menoscaban el respeto que se exige ante los tribunales y minan la confianza del Pueblo en nuestro sistema de justicia. Así, con el propósito de evitar la repetición de conductas como esta, hacemos un llamado general a los fiscales que se desempeñan en otros puestos del sector público para que observen los estándares disciplinarios de la profesión de la abogacía. De esta forma, advertimos que exigiremos más de ellos por la importancia y el significado de su puesto en la administración de justicia.
IV
Por los fundamentos que anteceden, censuramos enérgicamente las acciones del licenciado Molina Oliveras y se le apercibe que, de repetirse otra situación o conducta que incida sobre la normativa ética que rige la abogacía, este Tribunal podría imponerle sanciones disciplinarias más severas, incluyendo la suspensión indefinida del ejercicio de la profesión. Advertimos a los fiscales que se desempeñan en puestos públicos con el beneficio de una licencia sin sueldo que deben ser prudentes y observar los parámetros de ética de la profesión, absteniéndose de ejercer ilegalmente su cargo. Actuaciones de esta índole no pueden tomarse livianamente, pues de ello dependen la honra de la profesión y los fundamentos que sostienen la delicada balanza que asegura el funcionamiento íntegro y objetivo de nuestro sistema de gobierno. Ahora bien, luego de considerar la totalidad de las circunstancias y en el ejercicio de nuestra discreción, se archiva la queja.

Publíquese.

*564 Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Juez Asociada Señora Rodríguez Rodríguez no interviene. El Juez Asociado Señor Kolthoff Carabailo no intervino.
(Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

 Véase Moción en cumplimiento de orden, presentada por el Ledo. José Molina Oliveras, pág. 2.

 Apéndice del Informe del Procurador General, pág. 11.

 íd. Véase la Moción en cumplimiento de orden, presentada por el Ledo. José Molina Oliveras.

 Queja AB-2008-221, pág. 2.

 Íd.

 Contestación a queja, pág. 2. No obstante, en su Moción en cumplimiento de orden, pág. 2, el licenciado señala que ambas funciones eran compatibles, pues “se dirigían a proteger vida y propiedad, así como el procesamiento de los infractores de los reglamentos y las leyes aplicables en la [AAA]”. Por ello, aduce que esa fue una de las razones por las que se le aprobó la licencia. Además, el licenciado admite que habló con el agente Pellot Ruiz y que este le informó sobre el incidente acaecido en la huelga. Sostiene que, como Fiscal, tenía el deber ministerial de investigar y proceder a someter el caso lo antes posible.

 Declaración jurada de José Miguel Molina Oliveras de 3 de noviembre de 2008, pág. 2, que acompaña la Contestación a la queja.

 El 4 de junio de 2009 acogimos una solicitud de la Oficina del Procurador General para paralizar los procedimientos disciplinarios contra el licenciado Molina Oliveras mientras la Oficina del Inspector General del Departamento de Justicia investigaba si el querellado incurrió en violaciones administrativas en sus funciones como Fiscal. Sin embargo, la investigación del Inspector General concluyó, porque el 31 de julio de 2010 se hizo efectiva la solicitud de renuncia del licenciado Molina Oliveras a su puesto de Fiscal. Véase Informe del Procurador General, pág. 3.

 Apéndice del Informe del Procurador General, pág. 12.

 íd., págs. 12 y 15.

 íd.

 íd., págs. 4-5.

 Informe del Procurador General, pág. 7.

 íd.

 íd., pág. 5.

 Señalamos: “Como la ley expresamente le prohíbe al Fiscal Corona Muñoz ejercer la abogacía, existe claramente una incompatibilidad de derecho, por razón del cargo de Fiscal que ocupa, de ser, a la vez, abogado [...]”. (Énfasis en el original). In re Corona Muñoz I, 141 DPR 640, 647 (1996).

 En su Moción en Cumplimiento de Orden, el querellado admite que habló con el agente Pellot Ruiz y que le instruyó que sometiera los cargos contra el quejoso lo antes posible. Indica, pues, que este era su “deber ministerial”. Véase esc. 6.

 Véase Apéndice del Informe del Procurador General, págs. 4-5.